# ATCHISON, TOPEKA & SANTA FE RAILWAY CO. *v.* BUELL

No. 85–1140.   Argued December 1, 1986—Decided March 24, 1987

STEVENS, J., delivered the opinion for a unanimous Court.

*Rex E. Lee* argued the cause for petitioner. With him on the briefs were *R. Eden Martin, Ronald S. Flagg, John H. Ernster,* and *Thomas D. Peterson-More.*

*James R. McCall* argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

A railroad has a duty to use reasonable care in furnishing its employees with a safe place to work. That duty was recognized at common law, see *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350, 352–353 (1943), is given force through the Federal Employers' Liability Act (FELA), 45 U. S. C. §51 *et seq.,* and is confirmed in some, if not all, collective-bargaining agreements. Breaches of the duty may at times give rise to typical labor disputes for which the Railway Labor Act (RLA), 44 Stat. 577, as amended, 45 U. S. C. §151 *et seq.,* sets forth binding arbitration procedures.

---

*Briefs of *amici curiae* urging reversal were filed for the Association of American Railroads et al. by *Stephen A. Trimble, Richard W. Turner,* and *John M. Clifford;* and for the National Railway Labor Conference by *I. Michael Greenberger.*

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations et al. by *Marsha Berzon, Lawrence M. Mann, Jerome M. Alper,* and *Laurence Gold;* and for the Teamsters for a Democratic Union et al. by *Paul Alan Levy* and *Alan B. Morrison.*

Breaches may also result in injuries to a railroad's employees—injuries for which the FELA would appear to give employees a cause of action for damages. The question in this case is whether the possibility of pursuing a labor grievance under the RLA deprives an employee of his right to bring an FELA action.

## I

Respondent, a carman employed by petitioner, the Atchison, Topeka and Santa Fe Railway Company (Railroad), filed an FELA complaint in Federal District Court, alleging that he had suffered severe personal injuries as a result of the Railroad's failure

> "to provide [him] with a safe place to work, including, but not limited to, having fellow employees harass, threaten, intimidate [him], and in particular, foreman Ed Wright threatened, harassed, and intimidated [him] maliciously and oppressively, negligently, and intentionally, in order to cause personal injury to [him] and to cause mental and emotional suffering. All said acts were condoned and approved by [the Railroad] and as a direct and proximate result of said negligence and intentional acts, [he] was caused to suffer an emotional breakdown, thus inflicting on [him] injuries and damages as hereinafter alleged." App. 7.

The Railroad filed an answer, asserting, among other defenses, that respondent's sole remedy was before the National Railroad Adjustment Board (Adjustment Board) pursuant to the RLA. *Id.*, at 10–13.

Through the ensuing discovery, the Railroad identified various incidents of harassment that were embraced within the complaint's allegations,[1] and also established that its

---

[1] Most of the incidents involved Ed Wright, respondent's immediate supervisor. He allegedly insisted that respondent and other carmen complete certain car inspection reports in an improper manner, directed respondent to help him remove company property from the yard, repeatedly

collective-bargaining agreement with respondent's union allowed an employee to prosecute a grievance through successive levels of appeal up to and including mutually binding arbitration before the Adjustment Board.[2] Discovery also brought out that respondent had suffered a mental breakdown, and certain associated physical disorders, that required his hospitalization for 17 days.

The Railroad then moved for dismissal or for summary judgment. The ground for its motion, in the Railroad's own words, was that "there is no subject matter jurisdiction in the district court to entertain an action concerning a labor dispute between a 'carrier' subject to the Railway Labor Act and its employees." Record Doc. No. 42, p. 6. The District Court accepted this argument, and granted summary judgment on "the narrow question of the availability to an employee covered by the RLA of an FELA remedy based on an alleged negligent failure to maintain a safe workplace." App. to Pet. for Cert. 11a. The Court of Appeals reversed. It held that respondent's claims were not arbitrable under the RLA, and that an FELA action was therefore not precluded. 771 F. 2d 1320, 1323–1324 (CA9 1985). Additionally, although the question had neither been raised by the parties[3] nor addressed by the District Court,[4] the Court of

threatened to discharge respondent, and condoned conduct by other employees that was obviously intended to humiliate respondent.

[2] Respondent and several other carmen requested their union to prepare a written grievance and the union discussed respondent's complaints with the Railroad, but no formal grievance was ever initiated.

[3] One of the captions in the Railroad's brief in the Court of Appeals stated without reservation that "[t]he sole issue is whether plaintiff's claims are subject to the mandatory, exclusive administrative jurisdiction of the NRAB." See Brief for Appellee in No. 84–2288 (CA9), p. 18.

[4] At the hearing on the motion to dismiss or for summary judgment the District Court stated: "The matter is on today's calendar for defendant's motion for summary judgment on the grounds that the complaint raises issues that are within the jurisdiction of National Railroad Adjustment Board, and therefore not within this Court's jurisdiction." 3 Tr. 2.

Appeals proclaimed that a relevant "issue, one of first impression in this circuit, is whether a Railroad employee's wholly mental injury stemming from his railroad employment is compensable under the [FELA]." *Id.*, at 1321. The Court of Appeals concluded that the FELA does authorize recovery for emotional injury. Because of the important role these two statutes play in railway labor relations, we granted certiorari. 476 U. S. 1103 (1986).

## II

In 1906,[5] Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees. A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases. The Act expressly prohibits covered carriers from adopting any regulation, or entering into any contract, to limit their FELA liability.[6] The coverage of the statute is defined in broad language,[7] which

---

[5] The original 1906 enactment, 34 Stat. 232, was struck down in *Howard* v. *Illinois Central R. Co.*, 207 U. S. 463 (1908), on the ground that it applied to intrastate as well as interstate commerce. In 1908, Congress enacted another version, 35 Stat. 65, which applied only to interstate commerce, and included some substantive modifications.

[6] Section 5 of the FELA, as codified, provides, in part:
"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U. S. C. § 55.

[7] Section 1 of the FELA, as codified, provides, in part:
"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, tract, roadbed, works, boats, wharves, or other equipment." 45 U. S. C. § 51.

has been construed even more broadly.[8]   We have recognized generally that the FELA is a broad remedial statute, and have adopted a "standard of liberal construction in order to accomplish [Congress'] objects." *Urie* v. *Thompson*, 337 U. S. 163, 180 (1949).

The RLA, by contrast, provides a comprehensive framework for the resolution of labor disputes in the railroad industry.   Enacted in 1926, the text of the RLA does not mention the FELA or otherwise deal with the subject of tort liability.   Rather, the RLA establishes elaborate administrative procedures for the resolution of both major and minor labor disputes.[9]   The statutory procedures for resolving "major

---

[8] Thus, for example, with respect to causation, we have held that "the test of a jury case" under the statute is "simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 506 (1957). Indeed, in the spirit of broad construction, the FELA has been construed to cover some intentional torts even though its text only mentions negligence.   See *Jamison* v. *Encarnacion*, 281 U. S. 635, 641 (1930); *Lancaster* v. *Norfolk & Western R. Co.*, 773 F. 2d 807, 812–813 (CA7 1985), cert. pending, No. 85–1702; *Slaughter* v. *Atlantic Coast Line R. Co.*, 112 U. S. App. D. C. 327, 302 F. 2d 912, cert denied, 371 U. S. 827 (1962); see generally Annot., Liability Under Federal Employers' Liability Act for Intentional Tort, 8 ALR 3d 442 (1966).

[9] In enacting the RLA:

"Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements.   See *Gunther* v. *San Diego & A. E. R. Co.*, [382 U. S. 257 (1965)]; *Union Pacific R. Co.* v. *Price*, [360 U. S. 601 (1959)]; *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239 (1950).   The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules, and working conditions.   *Union Pacific R. Co.* v. *Price, supra*, at 611; *Elgin J. & E. R. Co.* v. *Burley*, 327 U. S. 661, 664 (1946).   Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts.

disputes"—those arising "out of the formation or change of collective [bargaining] agreements covering rates of pay, rules, or working conditions," *Detroit & T. S. L. R. Co.* v. *Transportation Union*, 396 U. S. 142, 145, n. 7 (1969)—are not relevant to this case. The "minor dispute" provisions are relevant, however, because the Railroad argues that the underlying dangerous condition in this case could have been grieved as a minor dispute—one "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," 45 U. S. C. § 153, First (i). Minor disputes initially must be dealt with through a railroad's internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties. Judicial review of these Boards' determinations has been characterized as "'among the narrowest known to the law.'" *Union Pacific R. Co.* v. *Sheehan*, 439 U. S. 89, 91 (1978) (citation omitted).

The Railroad makes three arguments in support of its contention that respondent may not bring an FELA action for his injuries. First, it argues that the exclusive forum for any dispute arising out of workplace conditions is the RLA. Second, it argues that even if many workplace injuries are actionable under the FELA, emotional injuries should not be actionable because of their close relationship to minor disputes that are to be brought under the RLA. Finally, the Railroad responds to the Court of Appeals' discussion of whether the term "injury" as used in the FELA includes purely emotional injury, and argues that it does not. We reject the Railroad's first two arguments.[10] As for the third

---

*Trainmen* v. *Chicago, R. & I. R. Co.*, 353 U. S. 30, 40 (1957)." *Union Pacific R. Co.* v. *Sheehan*, 439 U. S. 89, 94 (1978).

[10] In analyzing the Railroad's arguments that the RLA precludes an FELA action for this type of injury, it is essential to recognize that the arguments do not depend on the Railroad's alternative argument that the

argument, which focuses on the scope of the FELA, we believe that the record is insufficiently developed at this preliminary stage to allow us, or the Court of Appeals, to express an opinion on respondent's ultimate chances of recovery under the FELA.

## III

The Railroad asserts first that employees have the right to have defects in the workplace corrected by resorting to the grievance machinery that is in place pursuant to the RLA, and that the RLA is the exclusive remedy for such minor disputes. Indeed, in this case, preliminary though abortive steps in that direction were actually taken. Thus, the Railroad argues that an FELA action for damages is barred. We find no merit in this argument. The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages. Presumably a host of personal injuries suffered by railroad employees are caused by negligent practices and conditions that might have been cured or avoided by the timely invocation of the grievance machinery.[11] See *Yawn* v. *Southern R. Co.*, 591 F. 2d 312, 317 (CA5 1979). But we have never considered that possibility a bar to an employee's bringing an FELA claim for personal injuries, and the Railroad has not persuaded us to do so now.

This Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes. See, *e. g.*, *McDonald* v. *West Branch*, 466 U. S. 284

---

FELA does not provide damages for purely emotional injury. The preclusion argument turns, not on the nature of an employee's injury, but on the source of the injury.

[11] See, *e. g.*, *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350 (1943); *Lavender* v. *Kurn*, 327 U. S. 645 (1946); *Ellis* v. *Union Pacific R. Co.*, 329 U. S. 649 (1947); cf. *Gateway Co.* v. *Mine Workers*, 414 U. S. 368 (1974).

(1984); *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728 (1981); *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36 (1974). Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine, supra,* at 737.

This principle is instructive on the question before us. The FELA not only provides railroad workers with substantive protection against negligent conduct that is independent of the employer's obligations under its collective-bargaining agreement, but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board.[12] It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion. As then District Judge J. Skelly Wright concluded, "the Railway Labor Act . . . has no application to a claim for damages to the employee resulting from the negligence of an employer railroad." *Barnes* v. *Public Belt R. R. Comm'n for City of New York,* 101 F. Supp. 200, 203 (ED La. 1951).

It is true that the RLA remedy for the resolution of minor disputes is "in at least some situations" exclusive. *Andrews* v. *Louisville & Nashville R. Co.,* 406 U. S. 320, 325 (1972).

---

[12] See *Lewy* v. *Southern Pacific Transportation Co.,* 799 F. 2d 1281, 1295, 1297 (CA9 1986) (RLA remedies are backpay and reinstatement); National Railroad Ajustment Board, First Division, Award No. 16111 (Feb. 23, 1953) ("[T]here is a remedy to correct the practice if it is wrong, even though it does not extend to a money damage"). Counsel for petitioner also represented that the Adjustment Board only awards "damages in the sense of reinstatement and back pay," and cannot "award damages in the sense of the kinds of damages that a court would under an FELA" action. Tr. of Oral Arg. 11.

In *Andrews*, an employee brought a state wrongful discharge claim based squarely on an alleged breach of the collective-bargaining agreement. We held that Congress had intended the RLA dispute resolution mechanism to be mandatory for that type of dispute, and that courts were therefore foreclosed from addressing claims that properly arise under the RLA. In this case, by contrast, Congress has enacted the FELA to serve as the statutory basis for the award of damages to employees injured through an employer's or co-worker's negligence.

Unwilling to rely solely on the argument that *any* injury caused by a condition that could have been the subject of a grievance under the RLA is not actionable under the FELA, petitioner and various *amici* argue, in the alternative, that the RLA requires that a narrow "emotional injury" exception be carved out of the FELA. Because they fear that many workers alleging emotional injuries are really complaining of unhappiness arising out of everyday workplace disputes, they ask us to hold that the RLA provides the exclusive remedy for this ill-defined class of injuries. Even if we were to find some authority allowing us to rewrite the FELA in this manner, we are not persuaded that it would be appropriate to do so. There is no basis for assuming that allowing FELA actions for emotional injury will wreak havoc with the general scheme of RLA arbitration,[13] and absent an intolerable

---

[13] Petitioner predicts that if emotional injuries are cognizable under the FELA, virtually no employees will pursue grievances through the RLA since "'every employee who believes he has a legitimate grievance will doubtless have some emotional anguish.'" Brief for Petitioner 24 (quoting *Magnuson* v. *Burlington Northern, Inc.*, 576 F. 2d 1367, 1369 (CA9), cert. denied, 439 U. S. 930 (1978)). Indeed, one *amicus* asserts that a large portion of the 183,800 grievances filed in 1985 would be pursued as FELA actions instead, thus creating the "potential for doubling the volume of civil filings in the federal courts." Brief for Association of American Railroads et al. as *Amici Curiae* 16. This parade of horribles mistakenly assumes that a significant percentage of employees bringing grievances suffer the type of severe emotional injury that has generally been required to estab-

conflict between the two statutes, we are unwilling to read the RLA as repealing any part of the FELA. See *Morton* v. *Mancari*, 417 U. S. 535, 550 (1974). Although we do not decide today whether purely emotional injuries are cognizable under the FELA, we stress that it is the FELA that controls that inquiry, not the RLA. As far as a worker's right to damages under the FELA is concerned, Congress' enactment of the RLA has had no effect.

## IV

The Railroad also contends that the judgment of the Court of Appeals should be reversed because it erroneously concluded that a railroad employee's "wholly mental injury" is compensable under the FELA. The problem with our addressing this argument is that, because of the posture in which this case comes before us, the record has never been developed on the exact nature of the allegedly tortious activity, or the extent of the injuries that respondent claims to have suffered. As we have mentioned, petitioner's motion for dismissal or for summary judgment was based on the sole ground that an employee's exclusive remedy for a railroad's failure to maintain a safe workplace is to file a grievance

---

lish liability for purely emotional injury, see n. 18, *infra,* and that a significant percentage of employees are subject to the type of unconscionable abuse which is a prerequisite to recovery. In *Farmer* v. *Carpenters,* 430 U. S. 290 (1977), we held that a state action for intentional infliction of emotional distress was not pre-empted by the National Labor Relations Act (NLRA), and pointed out that the risk of interference with the NLRA was minimized by the fact that state law permitted "recovery only for emotional distress sustained as a result of 'outrageous' conduct." *Id.,* at 305. See generally American Bar Association's Special Committee on the Tort Liability System, Towards a Jurisprudence of Injury: The Continuing Creation of a System of Substantive Justice in American Tort Law 5–17 (1984) (courts have been properly concerned to keep tort from becoming a remedy for minor upsets); Restatement (Second) of Torts § 46(d) (1965) (hereafter Restatement) (discussing "outrage" element).

under the RLA.[14]  Respondent's memorandum, of course, sought to respond to that narrow argument alone, and did not deal with the question whether emotional injury is actionable under the FELA.[15]

The question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case.  Assuming, as we have, that FELA jurisprudence gleans guidance from common-law developments, see *Urie* v. *Thompson*, 337 U. S., at 174, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.  For example, while most States now recognize a tort of intentional infliction of emotional distress,[16] they vary in the degree of intent required to

---

[14] See nn. 3 and 4, *supra*.  Indeed, in ruling on the motion the District Court explicitly stated that the railroad did not dispute at that juncture that the claim fell under the FELA, but instead "[sought] to avoid the issue by contending that exclusive jurisdiction to resolve plaintiff's claim lies elsewhere."  Record Doc. No. 44, p. 4.

[15] Under the Federal Rules of Civil Procedure, respondent had no duty to set out all of the relevant facts in his complaint.  See Fed. Rule Civ. Proc. 8; *Conley* v. *Gibson*, 355 U. S. 41, 47–48 (1957).  Had petitioner moved for summary judgment on the ground that FELA does not recognize claims for respondent's type of injury, respondent would have had the opportunity to supplement the record with relevant facts to contest that motion.  See Fed. Rule Civ. Proc. 56(c).  As we explained last Term, summary judgment is available only when, "after adequate time for discovery and upon motion," the party seeking summary judgment has satisfied its "responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.* v. *Catrett*, 477 U. S. 317, 323 (1986).

[16] "The tort of intentional infliction of mental distress as described in § 46 of the Restatement [(Second) of Torts] can be safely characterized as the general rule in the United States. . . . As of 1977, 37 jurisdictions had rec-

establish liability,[17] and the level of physical manifestation of the emotional injury required to support recovery.[18]  Moreover, some States consider the context and the relationship between the parties significant, placing special emphasis on the workplace.[19]   In addition, although many States have now recognized a tort of negligent infliction of emotional distress,[20] they too vary in the degree of objective symptomatol-

ognized the tort." *Leithead* v. *American Colloid Co.*, 721 P. 2d 1059, 1066 (Wyo. 1986).

[17] The Restatement § 46(1) sets forth an "intentionally or recklessly" standard.   Many jurisdictions have adopted this test.   See, *e. g.*, *Watts* v. *Golden Age Nursing Home*, 127 Ariz. 255, 258, 619 P. 2d 1032, 1035 (1980) (recklessness); *Davidson* v. *Westminster*, 32 Cal. 3d 197, 209, 649 P. 2d 894, 901 (1982) (recklessness); *Freihofer* v. *Hearst Corp.*, 65 N. Y. 2d 135, 143, 480 N. E. 2d 349, 355 (1985) (recklessness).   Others apply different standards.   See, *e. g.*, *M. B. M. Co.* v. *Counce*, 268 Ark. 269, 277, 596 S. W. 2d 681, 685–686 (1980) (willful or wanton); *Anderson* v. *Prease*, 445 A. 2d 612, 613 (D. C. App. 1982) (intention can be inferred from outrageousness of conduct); *Hall* v. *May Department Stores Co.*, 292 Ore. 131, 135, 637 P. 2d 126, 129 (1981) (indifference and gross negligence not enough); *Wright* v. *Hasley*, 86 Wis. 2d 572, 576, 273 N. W. 2d 319, 321 (1979) ("purposely").

[18] One leading commentary states that "[i]n the great majority of cases allowing recovery the genuineness of the mental disturbance has been evidenced by resulting physical illness of a serious character."   W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 64 (5th ed. 1984).   The American Law Institute urges that as long as the distress is "genuine and severe," bodily harm should not be required.   Restatement § 46(k).   Many jurisdictions have adopted the Restatement's approach, see, *e. g.*, *Poulsen* v. *Russell*, 300 N. W. 2d 289, 291 (Iowa 1981); *Vicnire* v. *Ford Motor Credit Co.*, 401 A. 2d 148, 154 (Me. 1979).   Others, however, appear to be more demanding in their scrutiny.   See, *e. g.*, *Hubbard* v. *United Press International, Inc.*, 330 N. W. 2d 428, 437–440 (Minn. 1983); *Hassing* v. *Wortman*, 214 Neb. 154, 158–166, 333 N. W. 2d 765, 767–771 (1983).

[19] See *Hall, supra*, at 131, 637 P. 2d, at 126; *Contreras* v. *Crown Zellerbach Corp.*, 88 Wash. 2d 735, 741, 565 P. 2d 1173, 1176–1177 (1977); *Alcorn* v. *Anbro Engineering, Inc.*, 2 Cal. 3d 493, 498, n. 2, 468 P. 2d 216, 218, n. 2 (1970).

[20] For example, while the traditional rule was that a plaintiff could not recover for mental injuries unconnected with actual or threatened impact,

ogy the victim must demonstrate.[21]    These issues are only
exemplary of the doctrinal divergences in this area.    In
short, the question whether one can recover for emotional
injury may not be susceptible to an all-inclusive "yes" or
"no" answer.    As in other areas of law, broad pronounce-
ments in this area may have to bow to the precise application
of developing legal principles to the particular facts at hand.

Since, through no fault of either party, we do not know
what all those facts are in this case, we cannot begin to decide
whether respondent will be able to support his allegation that
petitioners are liable to him under the FELA.[22]    Given the
posture of the case, there was no reason for the Court of Ap-
peals to express an opinion on this issue.    Without agreeing
or disagreeing with the merits of the Court of Appeals' dis-
cussion of the emotional injury issue, we affirm its judgment

the majority of jurisdictions now appear to have abandoned that rule.    See
generally *Gates* v. *Richardson*, 719 P. 2d 193, 195, n. 1 (Wyo. 1986) (citing
cases from 37 jurisdictions); Restatement §§ 313, 436, 436A; Bell, The Bell
Tolls: Toward Full Tort Recovery for Psychic Injury, 36 U. Fla. L. Rev.
333, 336–340 (1984); Note, Administering the Tort of Negligent Infliction of
Emotional Distress: A Synthesis, 4 Cardozo L. Rev. 487 (1983).

[21] As the Wyoming Supreme Court recently observed: "[A]mong the
courts that recognize the cause of action for negligent infliction of emo-
tional distress, there is a great deal of variation in the damages they
allow."    *Gates, supra,* at 199–200.    See, *e. g., Leong* v. *Takasaki,* 55
Haw. 398, 403, 520 P. 2d 758, 762 (1974) (no minimum showing of severity);
*Barnhill* v. *Davis,* 300 N. W. 2d 104, 108 (Iowa 1981) (severe injury);
*Corso* v. *Merrill,* 119 N. H. 647, 659, 406 A. 2d 300, 308 (1979) (objective
physical symptoms).    Some courts require an objective showing of physi-
cal symptoms to recover for negligent, but not intentional, infliction of
emotional distress.    See *Vicnire, supra,* at 157.

[22] Indeed, it appears that once the facts of this case are fleshed out
through appropriate motions or through an eventual trial, it might not
squarely present the question of pure emotional injury at all.    In the
course of respondent's deposition, he testified that there was at least one
episode of an actual assault by some co-workers.    2 Tr. 101, 102.    More-
over, he claimed to have suffered physical symptoms in addition to his
severe psychological illness.    *Id.,* at 7, 8.

only to the extent that it rejects the RLA preclusion argument advanced by the Railroad.

Accordingly, the judgment of the Court of Appeals is affirmed in part and vacated in part, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*