Daniel L. KULAVIC, Plaintiff,

v.

CHICAGO & ILLINOIS MIDLAND RAILWAY COMPANY, Defendant.

No. 87–3292.

United States District Court,
C.D. Illinois,
Springfield Division.

April 2, 1991.

---

Carol J. Hansen Fines, Springfield, Ill., Charles A. Collins, Minneapolis, Minn., for plaintiff.

Charles E. Holt, Springfield, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

Does a decision by a Public Law Board pursuant to the Railway Labor Act (RLA), 45 U.S.C. §§ 151–161 (1926), have a preclusive effect on the availability of damages in a subsequent action brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982)?

In short, yes.

### I. *Factual Background*

Plaintiff Daniel Kulavic (Kulavic), a carman in the employ of the Chicago & Illinois Midland Railway Company (Railroad), was involved in a physical altercation with his foreman on August 30, 1985. Kulavic was injured in the altercation and was placed on an eighty day working suspension. After conducting a physical examination of Kulavic and consulting with Kulavic's privately retained physicians (three of whom specifically released him to return to work with the fourth not commenting on his physical ability to work) the Railroad's General Surgeon deemed Kulavic capable of resuming his former position as a carman. Kulavic was instructed by letter to return to work on June 9, 1986.

Kulavic failed to report to work on June 9, 1986, and likewise failed to report on June 10, 11, 12, 13, 16, or 17. He contacted his supervisor and contended that his continued absence was due to the refusal of his (Kulavic's) private physicians to authorize his return to work. Kulavic's supervisor responded that any absence from work for medical reasons had to be substantiated by "medical evidence from a reputable physician." Evidence subsequently submitted by Kulavic failed to meet the Railroad's requirements.

On July 15, 1986, an investigation was conducted by the Railroad regarding Kulavic's failure to report to work as instructed. Kulavic was present and represented at the investigation. In response to the Railroad's allegation of unauthorized absence, Kulavic again contended that his physical condition prevented his return. After considering the evidence and testimony offered by Kulavic, the Railroad rejected his claims that he was physically unable to return to his former position as a carman and terminated his employment on July 25, 1986.

Kulavic appealed his dismissal by the Railroad to Public Law Board (PLB) # 4284 as provided by the RLA. In his appeal,

Kulavic contended that his failure to receive a fair and impartial hearing and his physical inability to work as a carman rendered his dismissal unjust and correspondingly sought reinstatement and compensation for lost wages and benefits. In an award dated July 2, 1987, PLB # 4284 rejected Kulavic's appeal and upheld his dismissal.

Approximately one month after the denial of his appeal by PLB # 4284, Kulavic filed the present FELA action against the Railroad seeking damages for injuries suffered as a result of the altercation with his foreman on August 30, 1985. On the issue of liability, the jury returned a verdict for Kulavic. The preclusive effect of PLB # 4284's decision on damages available to Kulavic in the FELA action at bar is now before the Court.

## II. *Analysis*

The RLA was enacted by Congress in 1926 to provide for the prompt, efficient, and final resolution of labor disputes stemming from railroad collective bargaining agreements. *See Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). Through the enactment of the RLA, Congress specifically intended to keep disputes which fell within the purview of the Act out of the courts. *Sheehan*, 439 U.S. at 94, 99 S.Ct. at 402. This desire for finality is reflected in the section of the RLA which creates the National Railroad Adjustment Board.[1] The RLA provides in relevant part:

> The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, *and the awards shall be final and binding upon both parties to the dispute.* In case a dispute arises involving an interpretation of the award the division of the Board upon request of either party shall interpret the award in the light of the dispute.

45 U.S.C. § 153, subd. 1(m) (1986) (emphasis added).

1. A Public Law Board is a form of the National Railroad Adjustment Board and is frequently

The FELA, enacted in 1906, was intended to provide a tort remedy for railroad workers injured on the job. *See Lancaster v. Norfolk and Western Railway Co.*, 773 F.2d 807 (7th Cir.1985). The main purpose of the Act was to give injured railroad workers the ability to overcome traditional defenses to tort liability which had barred their actions in the past. *Lancaster*, 773 F.2d at 813. Because of its broad intended scope and language, the FELA has been interpreted to include both the negligent actions of employers and a limited number of intentional torts. *See Jamison v. Encarnacion*, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930).

The Railroad's argument is of two parts. First, the Railroad contends that PLB # 4284 addressed and resolved the following issues:

1. Whether the investigation regarding Kulavic's unauthorized absence conducted by the Railroad afforded Kulavic a fair and impartial hearing;

2. Whether Kulavic, at the time of his termination by the Railroad was physically capable of performing the duties of a carman; and

3. Whether Kulavic was entitled to wages and benefits accrued since his dismissal or to future wages and benefits (i.e. reinstatement) from the Railroad.

The Railroad next argues that because Kulavic has previously failed to prevail on these issues (in front of PLB # 4284) he should not have the opportunity to relitigate them in the FELA action at bar. On this basis, the Railroad urges the Court to forbid Kulavic from presenting the issues of lost wages, lost benefits, or diminished earning capacity since the date of his discharge (July 25, 1986) to the jury in the damages stage of the cause at bar.

Kulavic's argument is also of two parts. Kulavic first contends that if the RLA has any preclusive effect on damages available in a FELA action, it is limited to the issue of back pay. In the alternative, Kulavic argues that PLB # 4284 considered and resolved only the question of whether his

stipulated to by the parties to expedite the resolution of the dispute.

dismissal by the Railroad was arbitrary and did not consider whether he was physically capable of performing the duties of a carman.

### A. *Issues Resolved By Public Law Board # 4284*

■ The initial question before the Court is what issues were considered and resolved by PLB # 4284. In his appeal to PLB # 4284, Kulavic alleged that his discharge was wrongful for two reasons. First, Kulavic claimed that the investigation conducted by the Railroad which resulted in his discharge did not afford him a fair and impartial hearing. Second, Kulavic alleged that he was not guilty of unauthorized absence due to his continuing physical disability.

Considering the impartiality of the investigation conducted by the Railroad, PLB # 4284 concluded that "[u]pon review, we find that the investigation was conducted in a fair and impartial manner. None of claimant's [Kulavic's] agreement rights was [sic] violated." *Brotherhood of Railway Carmen v. Chicago & Illinois Midland Railway Company*, Public Law Board No. 4284, Award No. 1, Case No. 1, p. 4 (1987) (Carter, Hennecke, Wojtowicz, Arbs.). PLB # 4284 next examined the validity of Kulavic's claim that his dismissal was unjust due to the fact that his physical condition precluded his return to work as a carman.

The essential inquiry, as framed by Kulavic's appeal to PLB # 4284, was whether Kulavic, at the time of his dismissal, was physically capable of performing the duties of a carman. Public Law Board # 4284 conclusively determined that at the time of· his dismissal, Kulavic was physically capable of returning to work. In its review of the evidence presented by the parties, PLB # 4284 noted that three of the four private physicians treating Kulavic specifically released him for a return to work prior to June 9, 1986, with the fourth indicating nothing in his prognosis of Plaintiff which would prevent a return to work. *Id.* at p. 2. Additionally, PLB # 4284 reviewed the decision made by the Chief Surgeon of the Railroad ordering Kulavic back to work.

The members of the Board commented that "[t]he decision of Carrier's Chief Surgeon in the present case certainly was not arbitrary. The record shows that he sought and considered the reports of doctors who had examined or treated claimant during the time of his disciplinary suspension." *Id.* at p. 5. Summarizing their finding that Kulavic had been physically capable of returning to work when ordered to do so by the Railroad, PLB # 4284 concluded that "[t]here was no evidence presented in the investigation that claimant was being withheld from Carrier's service by any doctor. It is clear from the record that claimant was attempting to substitute his personal opinion as to his ability to return to work for the professional opinions of the several medical doctors involved." *Id.* at p. 4.

### *Preclusive Effect of PLB # 4284's Decision*

■ It is clearly within the power of a Public Law Board to rely on the professional opinion of a medical doctor or doctors when determining the physical ability of an employee to perform a certain job. *Gunther v. San Diego & Arizona Eastern Railway Co.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). In *Gunther*, a division of the Adjustment Board convened a panel of physicians for the purpose of determining the ability of the petitioner to preform his job. In response to a lower court ruling that the Adjustment Board exceeded its jurisdiction in relying on the opinion of the panel the Supreme Court stated:

> On a question like the one before us here, involving the health of petitioner, and his physical ability to operate an engine, arbitrators would probably find it difficult to find a better method for arriving at the truth than by the use of doctors selected as these doctors were. We reject the idea that the Adjustment Board in some way breached its duty or went beyond its power in relying as it did upon the finding of this board of doctors.

*Gunther*, 382 U.S. at 262, 263, 86 S.Ct. at 371.

The Supreme Court and the Seventh Circuit have established that an employee who

fails to prevail in a dispute submitted to the grievance machinery of the RLA may not relitigate those same issues in an independent judicial proceeding. In *Union Pacific Railroad Co. v. Price,* 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959), the Court examined whether an employee could pursue a common law remedy for damages for an alleged wrongful discharge after unsuccessfully pursuing the same claim in an action before the National Adjustment Board. On that question the Court held that:

> "[t]o say that the discharged employee may litigate the validity of his discharge in a common-law action for damages after failing to sustain his grievance before the Board is to say that Congress planned that the Board should function only to render advisory opinions, and intended the Act's entire scheme for the settlement of grievances to be regarded 'as wholly conciliatory in character, involving no element of legal effectiveness....' ...."

*Price,* 360 U.S. at 617, 79 S.Ct. at 1360 (quoting *Elgin, J. & E.R. Co. v. Burley,* 325 U.S. 711, 720–721, 65 S.Ct. 1282, 1288–1289, 89 L.Ed. 1886 (1945)). *See also Morrissette v. Chicago, Burlington & Quincy Railroad Co.,* 299 F.2d 502 (7th Cir.1961).

Kulavic asserts that because PLB # 4284 determined only that his discharge was not wrongful, and because his current FELA action asserts no claim for damages for wrongful discharge, that he is not relitigating any of the same issues addressed by the Public Law Board. The Court disagrees.

While it is true that PLB # 4284 did uphold Kulavic's discharge, it did so only after examining and resolving the issues underlying the discharge. This included determining whether at the time of his discharge, Kulavic was physically capable of preforming the duties of carman. After determining that Kulavic was not prevented from returning to work by his physical condition, PLB # 4284 concluded that the Railroad was justified in dismissing him and correspondingly that Kulavic had no right to either past wages and benefits

(accumulated since his dismissal) or future wages and benefits. To allow Kulavic to now argue to the jury the losses in wages, benefits, and earning capacity that he suffered due to the negligence of the Railroad which accrued after the date of his discharge would be to render the decision of PLB # 4284 on those questions "wholly conciliatory in character, involving no element of legal effectiveness."

Kulavic relies heavily on the Supreme Court's decision in *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). In *Buell,* the Court held that a railroad employee was not precluded from bringing a FELA action in District Court because the injury complained of might have been subject to arbitration under the RLA. Kulavic cites *Buell* to support his contention that the utilization of RLA grievance mechanisms in no way limits the damages available in an action brought pursuant to the FELA. Kulavic misreads *Buell.*

*Buell* dealt with a claim by the petitioner railroad that because the injury of which the respondent employee complained was arguably within the purview of the RLA, the employee was *completely* barred from bringing a FELA action based on that injury. *Buell,* 480 U.S. at 559, 107 S.Ct. at 1412. The Court predictably rejected petitioner's argument noting that "[i]t is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Id.* at 565, 107 S.Ct. at 1415. In the instant case, precluding Kulavic from presenting to the jury the issues of lost wages, benefits, or reduced earning capacity is in no way tantamount to denying him the right to bring a FELA action for the redress of his injuries. The purpose of the FELA, that of allowing injured employees an avenue to recover for the negligence of their employer, is upheld. Kulavic is in no way restricted from presenting to the jury issues regarding his future medical bills, pain and suffering and the like. However, to adopt the position of Kulavic would be to erode

the quality of finality which Congress intended decisions under the RLA to possess. This the Court will not do.

*Ergo,* for the reasons noted above, Plaintiff Kulavic is precluded from presenting the issues of lost wages, benefits, or lost earning capacity from the date of his discharge to the jury in the damages stage of this action.