John **MORRIS**, Plaintiff/Appellant,

v.

**UNION PACIFIC RAILROAD CO., and Missouri Pacific Railroad Co.,** Defendants/Respondents.

No. 60094.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 11, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 1992.

Application to Transfer Denied April 21, 1992.

Gray & Ritter, John G. Simon, St. Louis, for plaintiff/appellant.

Thompson & Mitchell, Dan H. Ball, James W. Erwin, St. Louis, for defendants/respondents.

AHRENS, Judge.

Plaintiff, John Morris, appeals from a summary judgment in favor of defendants, Union Pacific and Missouri Pacific Railroads, on his petition for harassment and intimidation. Plaintiff claims damages pursuant to the Federal Employers' Liability Act (F.E.L.A). We affirm.

Our review of the trial court's order granting defendants' summary judgment is made of the entire record construed in a light most favorable to the party against whom judgment is entered. *Continental Casualty Co. v. Maxwell,* 799 S.W.2d 882, 887 (Mo.App.1990). The record reveals the following facts. Plaintiff began employment with defendants on January 11, 1969. In 1972 or 1973, he began experiencing "high pressure harassment" from a supervisor, Jack Sheridan.[1] After plaintiff "bumped" another worker, Sheridan threatened to "run [plaintiff] off the job." Sheridan continuously watched plaintiff and tried to intimidate him. Sheridan demanded more production from plaintiff and on one occasion threatened to fire him when he thought plaintiff had failed to include rubber seals in an engine assembly. Lastly, Sheridan intimidated plaintiff into returning to work after plaintiff had been injured, and laughed at a cartoon about plaintiff that had been posted on a bulletin board.

Nine other supervisors contributed to the "harassment" of plaintiff. One supervisor gave plaintiff permission to be absent from work and upon his return conferred with him about his absenteeism. The supervisor also changed a job description after plaintiff was placed on the job, and then complained of plaintiff's lack of production. According to plaintiff's coworkers, a second supervisor made remarks concerning a credit union's repossession of plaintiff's car. Plaintiff was watched too closely, placed on jobs for which he had no experience, denied a promotion and vacation rights, and intimidated into returning to work while he was ill. Lastly, several supervisors falsified absentee forms and "harassed" plaintiff concerning allegedly unauthorized absences.

In the 1970's, plaintiff began to suffer from depression and slight headaches as a result of the supervisors' conduct. The headaches continued, and plaintiff in 1984 or 1985 began experiencing the headaches that form the basis of his complaint in the instant case. Plaintiff began suffering from stress in 1984, dizziness and loss of sleep in 1985 or 1986, and nightmares in 1987.

On June 25, 1975, certain of defendants' employees filed a class action suit in the United States District Court for the Eastern District of Arkansas, alleging defendants had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. The complaint alleged discrimination on the basis of race concerning the terms and conditions of em-

---

1. "Sheridan" is listed as "Sheraton" in plaintiff's deposition of November 30, 1988.

ployment, including job assignments, transfers, promotions, or terminations. Plaintiff was a class member of the suit.

A settlement agreement was incorporated into a consent decree preliminarily approved by the District Court on June 8, 1986. At a fairness hearing on the decree, plaintiff raised objections based upon dissatisfaction with his proposed monetary allocation. On September 18, 1986, the Court addressed plaintiff's objections in its order giving final approval to the decree, stating that "pursuant to the terms of the proposed Consent Decree Mr. Morris may decline payment as a subclass member and seek individual redress not based upon pattern and practice claims." In consideration of a $3,620.28 payment and pursuant to the consent decree, plaintiff elected to waive all race discrimination claims that were raised or that could have been raised in the litigation. Plaintiff's release applies to "all claims of any kind based upon the same underlying facts as [plaintiff's] race discrimination claims" for events occurring prior to November 11, 1986.

After settlement of the case, the conduct of which plaintiff complained in the race discrimination case grew worse. Defendants instituted new absentee forms and a "point system" that was allegedly enforced only against employees who had been active in the discrimination suit.

On October 14, 1987, plaintiff was granted a temporary medical leave of absence from his employment with defendants. On October 16, 1987, plaintiff submitted to defendants medical documentation recommending that plaintiff remain off work until November 15, 1987, due to stress and hypertension. On December 18, 1987, plaintiff's supervisor, M.L. Tegtmann, wrote to plaintiff and requested medical documentation to support plaintiff's absence beyond November 15, 1987. Plaintiff on December 26, 1987, wrote that he was still under the care of a doctor and that verification was forthcoming.

On January 4, 1988, Tegtmann instructed plaintiff to report for a formal investigation concerning plaintiff's failure to provide the requested documentation. On the same date, plaintiff wrote Tegtmann and enclosed two medical certificates, one advising plaintiff to remain off work until December 16, 1987, and the other indicating plaintiff would be able to return to regular work on January 18, 1988. By a disability certificate dated January 21, 1988, plaintiff's doctor excused him from work until January 22, 1988. On January 25, 1988, defendants' doctor recommended that plaintiff return to work on January 27, 1988. Plaintiff returned to work on that date.

On February 8, 1988, a different doctor recommended that plaintiff be placed on indefinite medical leave. Defendants placed plaintiff on a medical leave of absence effective that date. The investigation regarding plaintiff's failure to timely supply medical documentation was postponed until plaintiff returned to work. Plaintiff has not worked since February 8, 1988.

On February 29, 1988, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (Commission), alleging harassment concerning his medical leave of absence. Plaintiff stated he believed he was being harassed because of his race and in retaliation for having participated in the class action suit against defendants. The Commission determined the evidence adduced did not establish a violation of Title VII and informed plaintiff of his right to seek review of the determination. Plaintiff was also informed that if no review were requested, the charge would be dismissed and that, following dismissal, he could pursue the matter further only by filing suit in federal district court by February 8, 1989. Plaintiff filed no such suit.

On October 25, 1988, plaintiff filed the instant suit pursuant to the F.E.L.A., based on conduct of the defendants occurring between January, 1969, to February, 1988. Count I alleged defendants negligently failed to prevent their supervisors from harassing plaintiff, and negligently failed to provide reasonably adequate help and a reasonably adequate work environment. Count II alleged the conduct set forth in

count I was intentional. Lastly, count III alleged defendants negligently hired and/or retained certain supervisors when defendants knew or should have known the supervisors were harassing and intimidating plaintiff.

On or about November 16, 1990, defendants filed a motion for summary judgment, alleging they were entitled to summary judgment on all counts because (1) plaintiff's claim was for racial discrimination and harassment and, as such, was preempted by Title VII of the Civil Rights Act; (2) plaintiff's claim accrued in the 1970's and was therefore barred by the three-year statute of limitations applicable to F.E.L.A. claims, 45 U.S.C. § 56; and (3) plaintiff's claim, as a minor dispute, was required to be adjudicated through the grievance mechanism of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Alternatively, defendants sought summary judgment on all counts because (1) plaintiff in his class action suit had waived all claims based upon events prior to the date of the waiver; (2) the events occurring after the waiver did not constitute "unconscionable abuse" or "outrageous conduct" sufficient to give rise to a claim for emotional distress; and (3) plaintiff failed to elicit facts or circumstances indicating his injury was a reasonably foreseeable result of actions taken after the date of the waiver. Lastly, as to count II, defendants sought summary judgment because the F.E.L.A. provides no remedy for intentional acts.

On March 5, 1991, the trial court granted defendants' motion for summary judgment, stating that "[p]laintiff has failed to make a showing sufficient to establish the existence of a claim that is not barred by the defenses raised by Defendant."

On appeal from this order, plaintiff contends the trial court erred in granting defendants' motion because (1) the court erroneously assumed that the conduct of defendants which forms the basis of plaintiff's claim was racially motivated, that the F.E.L.A. does not provide a remedy for "racial harassment," and that Title VII preempts such a claim; (2) plaintiff's claim is not barred by the three-year statute of limitations under the F.E.L.A.; (3) plaintiff's claim is not barred by res judicata, since the conduct forming the basis of his claim in a prior Title VII class action is not the same conduct forming the basis of his present action; (4) plaintiff's claims are not "minor disputes" within the exclusive jurisdiction of the Railway Labor Act; and (5) sufficient evidence supported a finding that plaintiff's stress-related injuries resulted from defendants' negligent and intentional infliction of emotional distress.

■ We review a summary judgment as a court-tried proceeding, *Rue v. Helmkampf,* 657 S.W.2d 76, 80 (Mo.App.1983), and will sustain the judgment if it is sustainable on any theory. *Id.; Continental,* 799 S.W.2d at 889. Because our opinions on points three and five are dispositive, we need not reach plaintiff's remaining points.

■ Plaintiff in point three contends the release he signed in conjunction with his involvement in a prior class action suit does not preclude his present claim, since the two causes of action are separate and distinct. Further, plaintiff contends that even if some of the conduct forming the basis of each claim is similar, his present claim was not in existence at the time the class action release was signed, since he had at that time experienced no "physical harm" caused by the alleged emotional distress.

It is true that plaintiff's Title VII class action suit addressed an alleged pattern and practice of racial discrimination in defendants' employment practices, while plaintiff's present claim concerns defendants' alleged negligent or intentional infliction of emotional distress. However, as to events occurring prior to November 11, 1986, plaintiff's release in the class action waives "all individual or class-based claims, including pattern-and-practice claims," applies to "all claims of any kind based upon the same underlying facts as [plaintiff's] race discrimination claims," and "settles all claims which were or could have been raised" in the class action. Although plaintiff has couched his present action in terms of a F.E.L.A. claim, the conduct forming the basis for his suit is the same as the

conduct that formed the basis of his Title VII action.

■ In his deposition of November 30, 1988, plaintiff testified that in the class action case, he complained of harassment, discrimination in seniority, and discrimination in promotion. When asked to describe the specific type of harassment forming the basis of the suit, plaintiff identified the same incidents of harassment he alleges with respect to his present claim: (1) extra close supervision; (2) demands for extra production; (3) giving plaintiff permission to be absent from work, and upon his return conferring with him about his absenteeism; (4) harassment regarding vacations; (5) withdrawing or abolishing a job once its announcement had been posted on the bulletin board and plaintiff had bid on it; and (6) Sheridan's reaction to plaintiff's "bumping" a coworker. Plaintiff also described the harassment of which he complained in the class action as "[h]arassment like I stated earlier," referring to the incidents enumerated with respect to his present action. Further, plaintiff in identifying the supervisors whose harassment formed the basis of his class action suit named seven of the ten supervisors he contends engaged in conduct giving rise to his present claim. Even construing the record in a light most favorable to plaintiff, it is apparent that plaintiff's present claim is based upon the same set of underlying facts as his class action suit, although presented pursuant to the F.E.L.A. rather than Title VII. In applying the doctrine of res judicata, "[s]eparate legal theories are not to be considered as separate claims." *Siesta Manor, Inc. v. Community Fed. Sav. and Loan Assoc.*, 716 S.W.2d 835, 839 (Mo.App.1986).

Lastly, we consider plaintiff's contention that his present cause of action was not in existence at the time he signed the class action release because he experienced no "physical harm" caused by the alleged emotional distress until after the release was executed. In making this assertion, plaintiff assumes, first, that a claim pursuant to the F.E.L.A. for negligent and intentional infliction of emotional distress must be accompanied by allegations of "physical harm"; and, second, that the physical symptoms of his psychological illness are sufficient to constitute such harm.[2] We decide neither of these issues.

As detailed earlier, the record indicates plaintiff prior to the date of release experienced physical symptoms resulting from defendants' alleged harassment. Further, plaintiff by the mid-seventies had a "good idea" his stress was caused by his work, and a doctor in 1984 or 1985 informed plaintiff that his headaches were a symptom of stress and that stress at the workplace was causing his loss of sleep. By his own testimony, plaintiff prior to the date of the class action release both experienced physical manifestations of his injury and knew they were work-induced. Assuming plaintiff is correct in asserting that his allegations of "physical harm" are sufficient and required to support a F.E.L.A. claim for negligent and intentional infliction of emotional injury, plaintiff has waived any such claim in releasing defendants from liability for "all claims of any kind based upon the same underlying facts as [his] race discrimination claims" with respect to events occurring prior to the date of the release. Point three is denied.

■ In point five, plaintiff contends the trial court erred in granting summary judgment in favor of defendants, because there was sufficient evidence to support a finding that plaintiff's stress-related injuries

---

**2.** In *Amendola v. Kansas City S. Ry*, 699 F.Supp. 1401 (W.D.Mo.1988), the court held that a claim under the F.E.L.A. for negligently caused emotional distress must be accompanied by allegations of physical harm that caused or was caused by the emotional distress. *Id.* at 1409–10. However, this issue is far from settled in the federal courts. *See, e.g., Elliott v. Norfolk & Western Ry.*, 910 F.2d 1224 (4th Cir.1990), for a discussion of the conflicting positions taken by various circuit courts. The U.S. Supreme Court has not yet spoken on the issue, but has stated that "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Atchison, Topeka and Santa Fe Ry. v. Buell*, 480 U.S. 557, 568, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563, 575 (1987).

resulted from defendants' conduct. Plaintiff's argument is premised on a consideration of all his claims for harassment, including those based upon events occurring prior to the 1986 release. Because of our disposition in point three, we consider only defendants' post-release conduct in reviewing plaintiff's fifth point.

The only incidents of alleged harassment occurring after the execution of plaintiff's release are: (1) defendants' implementation of new absentee forms and a "point system" that was allegedly enforced only against employees who had been active in the Title VII case; and (2) defendants' requests for documentation of the medical condition causing plaintiff's absence from work and the scheduling of a formal investigation when plaintiff failed to provide such documentation.

Again, in addressing plaintiff's argument, we need not decide whether an emotional injury unaccompanied by physical harm is cognizable under the F.E.L.A., nor whether and to what extent physical manifestations of alleged emotional injuries must be present for recovery. Regardless of whether plaintiff's claim is cognizable under the F.E.L.A., we find insufficient evidence of the "unconscionable abuse" or "outrageous conduct" requisite to recovery on a claim for emotional distress. *See Atchison, Topeka and Santa Fe Ry. v. Buell*, 480 U.S. 557, 566 n. 13, 107 S.Ct. 1410, 1416 n. 13, 94 L.Ed.2d 563, 574 n. 13 (1987); *Elliott v. Norfolk & Western Ry.*, 910 F.2d 1224, 1229 (4th Cir.1990); *Hendrix v. Wainwright Indus.*, 755 S.W.2d 411, 412 (Mo.App.1988). Defendants' alleged conduct in no way approaches conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See* RESTATEMENT (SECOND) OF TORTS § 46(d).[3] Plaintiff does not contend defendants' post-release conduct is alone sufficient to state a claim for emotional injury. Our decision with re-

spect to point three effectively disposes of plaintiff's fifth point.

Because the trial court's summary judgment in favor of defendants is sustainable on the basis of points three and five, we need not reach plaintiff's remaining claims.

The judgment of the trial court is affirmed.

SMITH, P.J., and KAROHL, J., concur.

---

**3.** In *Pretsky v. Southwestern Bell Tel. Co.*, 396 S.W.2d 566 (Mo.1965), our supreme court essen-

tially adopted § 46. *Gibson v. Hummel*, 688 S.W.2d 4, 7 (Mo.App.1985).