Craig HANMANN, Plaintiff,

v.

**METRO–NORTH COMMUTER RAILROAD, Defendant.**

**No. 03 CIV. 7444CM.**

United States District Court,
S.D. New York.

May 4, 2005.

Ira M. Maurer, Croton–On–Hudson, NY, for Plaintiff.

James M. Woolsey, III, New York, NY, for Defendant.

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

MCMAHON, District Judge.

Plaintiff, Craig Hanmann, brings this action against his employer, Defendant

Metro–North Commuter Railroad (Metro–North), under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA), for injuries sustained while working and allegedly exacerbated by Defendant's conduct. Specifically, Plaintiff claims supervisors, agents, and employees of Defendant were negligent "in failing to provide Plaintiff with a reasonably safe place to work," (Amended Complaint, dated April 8, 2004, ¶ 5), and "by failing to furnish Plaintiff with safe and suitable tools, appliances, equipment, premises, assistance, supervision, training and procedures." (*Id.* at ¶¶ 12, 14.)[1] Plaintiff also claims that Defendant's Claims Department "improperly interfered with and delayed" the process of authorizing back surgery necessitated by the injuries "over a period of seven months, ... interfering with [P]laintiff's ability to mitigate his damages and adding to his pain and suffering." (Plaintiff's Second Supplemental Answers to Interrogatories, dated September 3, 2004, attached to Woolsey Decl., Exhibit O.) Plaintiff seeks compensatory damages in the sum of two million ($2,000,000.00) dollars.

Defendant has moved for partial summary judgment with regard to Plaintiff's "interference" claim, asserting that this Court lacks subject matter jurisdiction because the claim involves a "minor" labor dispute covered by the Railway Labor Act (RLA).

For the following reasons, Defendant's motion is denied.

## Background

The underlying facts of this case are not in controversy. Plaintiff was hired by Metro–North on July 30, 1984, and worked as a train car inspector ("car man") from August 7, 1985 through January 23, 2004. (Def. Rule 56.1 Statement ¶ 1.) Plaintiff was a member of the Transport Worker's Union (TWU) during his employment with Metro–North. (*Id.* at ¶ 2.) At the time that Metro–North was formed in 1983, TWU entered into a Collective Bargaining Agreement with Metro–North (1983 CBA) providing, in part, that Metro–North was permitted to administer and control all health and welfare benefit programs with the right to contract or self-insure, but that "the current level of coverage would be otherwise maintained." (*Id.* at ¶ 4.)

A new Collective Bargaining Agreement for the period of January 1, 1995 to December 31, 1998 (1998 CBA) incorporated the 1983 CBA. (Def. 56.1 ¶ 6.) In addition, a Memorandum of Understanding between Metro–North and TWU for the period of January 1, 1999[2] to December 31, 2002 sustained the provisions of the 1998 CBA with regard to payment for reasonable and necessary medical expenses related to on-the-job injuries or handling of grievances. (*Id.* at ¶ 7.) The 1998 CBA also contained a Grievance Procedure through which TWU members could address claims that they had been denied benefits afforded to them under the 1998 CBA. (*Id.* at ¶ 8.)

On April 22, 2002, Plaintiff claims that he injured his back while working as a car

---

1. It appears that Plaintiff injured his back while removing seats from a train car, although the motion papers do not elaborate on the exact nature of the injury or how it was sustained. (Examination Before Trial of Craig Hanmann at 59–64, dated March 25, 2003, attached as Exhibit A to Declaration of James M. Woolsey, III, in Support of Def. Motion for Partial Summary Judgment, dated Nov.19, 2004 (Woolsey Decl.).)

2. Defendant mistakenly typed "July 1" instead of "January 1" in his brief. A copy of the original Memorandum of Understanding between Metro–North and TWU was included with Defendant's moving papers and reads "January 1, 1999." (Woolsey Decl., Exhibit G.)

man for Metro–North. (Def. 56.1 ¶ 9.) He was initially treated by an orthopedist, Dr. Win Chang, who referred him to an orthopedic surgeon, Dr. Andrew Peretz. (*Id.* at ¶ 10.) In late October 2002, Dr. Peretz requested authorization from Metro–North's Medical Department to perform lumbar fusion surgery on Plaintiff. (*Id.* at ¶ 11.) The Medical Department forwarded that request to the Metro–North Claims Department. (Def. Mem. of Law in Support of Motion for Summary Judgment, dated Nov. 19, 2004, at p. 4.) Plaintiff claims that, according to Defendant's Operating Procedure 23–004 ("Procedure 23–004"), the Medical Department was solely responsible for deciding the issue of authorization, and Defendant totally disregarded Procedure 23–004 when it forwarded the authorization request to its Claims Department for determination. (Pl. Rule 56.1 Statement ¶¶ 2, 3.)

In February 2003, Dr. Ann Finegan, the Assistant Director of Occupational Health Services for Metro–North, wrote a letter to Dr. Peretz advising him that Metro–North would not be covering the cost of Plaintiff's lumbar fusion. (Def. 56.1 ¶ 12.) However, Dr. Finegan noted her opinion that Plaintiff required surgery in Defendant's Medical Department file. (Pl. 56.1 ¶ 4.)

Thereafter, the Claims Department requested that Dr. Frank Moore, a neurosurgeon, evaluate Plaintiff's lumbar spine. On April 16, 2003, Dr. Moore examined Plaintiff and recorded his findings in a report that he provided to Metro–North. (Def. 56.1 ¶ 13.) Dr. Moore recommended the surgery. (Pl. 56.1 ¶ 5.)

On May 30, 2003, Dr. Finegan and a Thomas Lemme sent a letter to Dr. Peretz advising that Metro–North would authorize payment for Plaintiff's lumbar fusion pursuant to a reasonable and customary fee. (Def. 56.1 ¶ 14.)[3] Dr. Peretz subsequently performed surgery on Plaintiff on July 16, 2003 at Northern Westchester Hospital Center in Mount Kisco, New York. (*Id.* at ¶ 15.)

Plaintiff alleges that Defendant improperly interfered with and delayed the process of authorizing Plaintiff's surgery from October 2002, when Dr. Peretz sent a letter to the Defendant seeking authorization, until May 30, 2003, when Defendant finally sent a letter to Dr. Peretz authorizing payment for the surgery. (Def. 56.1 ¶ 17.)

Standard for Summary Judgment

Rule 56(c) provides that summary judgment shall be granted where there is no "genuine issue as to any material facts and . . . the moving party is entitled to judgment as matter of law," that is, where the party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to the party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, a party opposing summary judgment must point to "specific facts showing that there is a genuine issue for trial," by proffering "significant probative evidence tending to support [its] complaint." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted). The non-movant "may not rest upon the mere allegations or denials of [its] pleadings," Fed.R.Civ.P. 56(e), or upon "mere speculation or conjecture as to the true nature of the facts." *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995).

**Discussion**

Under FELA, railroad workers can sue their employers for personal injuries suffered at the hands of the employers or

---

**3.** Defendant has not specified Mr. Lemme's position. In the letter to Andrew Peretz, Mr. Lemme's signature appears with the letters "R.P.A.C., MBA."

fellow employees. 45 U.S.C. § 51. On the other hand, the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.*, provides a mandatory, comprehensive scheme for the final and binding resolution of all "minor disputes" between a railroad and its employees. Section 152 of the RLA, paragraph "Eighth" states, "all disputes between the carrier and its employees will be handled in accordance with this chapter." Section 153, paragraph "First (i)," provides that:

> The disputes between an employee or group of employees and a carrier ... *growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or work conditions...* shall be handled in the usual manner... but failing to reach an adjustment... the disputes may be referred... to the appropriate division of the Adjustment Board.

(Emphasis added.)

"Although the RLA minor disputes remedy is exclusive in at least some circumstances, it is not exclusive in situations that the FELA was enacted to address." *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987). In *Buell,* the U.S. Supreme Court considered the issue of whether an employee's claim for personal injuries fell under FELA or RLA. The Court held that "the fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages." *Buell,* 480 U.S. at 557, 107 S.Ct. 1410. The major goal of enacting FELA was to "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Buell,* 480 U.S. at 561, 107 S.Ct. 1410. Furthermore, "FELA provides railroad workers not only with substantive protection against negligent conduct by the railroad, but also af-

fords an injured worker a remedy suited to his needs, untrammeled by many traditional defenses against tort liability." *Kulavic v. Chicago & Illinois Midland Ry. Co.,* 1 F.3d 507, 512 (7th Cir.1993). Accordingly, courts have recognized that FELA is "a broad remedial statute to be construed liberally to effectuate its purpose." *Buell,* 480 U.S. at 562, 107 S.Ct. 1410 (citing *Urie v. Thompson,* 337 U.S. 163, 180, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)).

In contrast, the RLA "provides a comprehensive framework for the resolution of *labor* disputes in the railroad industry." *Buell,* 480 U.S. at 562, 107 S.Ct. 1410 (emphasis added). Thus, the RLA typically deals with railroad employee disputes arising out of the formation or interpretation of collective bargaining agreements. *See Coppinger v. Metro–North Commuter R.R.,* 861 F.2d 33, 36 (2d Cir. 1988). The court in *Buell* stated that "it is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Buell,* 480 U.S. at 565, 107 S.Ct. 1410. Thus, I conclude that the potential applicability of the RLA to one aspect of a claim does not automatically preclude recovery under FELA if the suit itself is based in negligence and not in labor law. *See, e.g., Barnes v. Public Belt R.R. Comm'n for City of New Orleans,* 101 F.Supp. 200, 203 (E.D.La.1951) ("RLA ... has no application to a claim for damages resulting from the negligence of an employer railroad.")

In the narrow issue presented in this motion, Plaintiff alleges that Defendant's unreasonable delay of authorization for his back surgery prolonged Plaintiff's pain and suffering, diminished Plaintiff's ability to mitigate damages, and delayed his ability to seek alternative employment

post-surgery. (Pl. Mem. at 6.) Plaintiff asserts he is not attempting to litigate the issue of coverage of his medical expenses, work compensation or other benefits covered by a CBA. Metro–North, on the other hand, argues that Plaintiff's broad interference claim is preempted by the RLA because it is a "minor" labor dispute that would require this Court to interpret the applicable CBA. (Def. Mem. at 10.) The Defendant further contends that Plaintiff's narrow claim asserting failure to comply with Procedure 23–004 involves interpretation of the CBA. (Def. Reply Mem., dated Dec. 8, 2004, pp. 5, 6.)

Plaintiff disagrees, arguing that he commenced the present action under FELA to recover damages resulting from *negligence* that occurred in the course of his employment, and that his claims do not arise from a labor dispute. (Pl. Mem. at 6.) I agree with Plaintiff.

There is no doubt that the Plaintiff's main claims, negligent supervision and maintaining unsafe working conditions, are covered by FELA and do not arise out of the interpretation of a CBA. At this stage, it also appears that the interference claim is not based on interpretation of a CBA but rather on an analysis of whether Defendant's handling of Plaintiff's medical claim exacerbated injuries caused by its alleged negligence. The alleged violation of Procedure 23–004 is only one of the elements that might be taken into consideration in deciding the scope of Defendant's involvement, if any, in delaying Plaintiff's back surgery and whether additional injuries occurred as a result. In sum, Plaintiff's interference claim will be considered in the context of the larger negligence suit and will not be severed and dismissed as preempted by the RLA.

### Conclusion

The main issues in this case are Defendant's alleged negligence and damages arising from it, which are recoverable only under FELA. Improper delay of approval for surgery, if any, goes to damages and cannot be redressed by the grievance procedures of the RLA. Therefore, Defendant's Motion for Partial Summary Judgment is denied.

This constitutes the decision and order of the Court.