Theresa HARRIS–SCAGGS and
Wesley Scaggs, Plaintiffs,

v.

SOO LINE RAILROAD CO., d/b/a C.P.
Rail System and ABC Insurance
Co., Defendants.

No. 97–C–0164.

United States District Court,
E.D. Wisconsin.

May 6, 1998.

Janet L. Heins, Heins Law Office, Mequon, WI, for Plaintiffs.

Susan M. Robinger, Barry McGrath, Ellen G. Sampson, Daniel L. Palmquist, Leonard, Street & Deinard, Minneapolis, MN, for Defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

This opinion addresses the preemptive scope of the Federal Employers' Liability Act ("FELA" or "Act"), 45 U.S.C. §§ 51–60, and, specifically, the viability of non-FELA claims for negligent and intentional infliction of emotional distress, when brought by a railroad employee against her employer.

Plaintiffs Theresa and Wesley Harris–Scaggs have filed this action in federal court under Title VII of the Civil Rights Act of 1964, as amended, alleging that Ms. Harris–Scaggs' former employer Soo Line Railroad Company ("Soo Line") intentionally discriminated against her on the basis of her race. Specifically, the plaintiffs claim that Soo Line

subjected Ms. Harris–Scaggs, an African- and Native–American woman, to more frequent and intrusive inquiries into her reasons for missing work than white employees and generally maintained a work environment hostile to non-whites. The plaintiffs allege several specific incidents in which Soo Line management failed to respond to racially derogatory comments made by supervisors and co-workers, despite being notified of the incidents by Ms. Harris–Scaggs.

In addition to their Title VII claim, the plaintiffs plead three supplemental tort claims based on state law and arising out of the same factual allegations—negligent infliction of emotional distress, intentional infliction of emotional distress, and loss of consortium. This court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

Defendant Soo Line has moved to dismiss the three supplemental claims, arguing that the claims are preempted by the FELA. Although the plaintiffs have opposed dismissal on only the intentional infliction of emotional distress claim and the related claim for loss of consortium, I am denying the motion to dismiss on all three claims for the reasons set forth below.

## I.

Congress enacted an early version of the FELA in 1908, establishing the basic contours of this federal statute, drafted in response to the rising toll of serious injuries and death among workers in the railroad industry. The FELA creates a federal tort remedy for railroad employees injured on the job and "provide[s] the framework for determining liability for industrial accidents." *Kernan v. American Dredging Co.*, 355 U.S. 426, 432, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). The FELA section pertaining to liability states that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier ..." 45 U.S.C. § 51. The liability framework itself abolishes the fellow servant rule; subsequent sections of the FELA prohibit the use of other traditional common-law defenses such as contributory negligence, assumption of risk, and contrac-

tually based immunity. *See* 45 U.S.C. §§ 51, 53–55.

The origins of the FELA might lead one to believe it is a workers' compensation statute, like so many passed in the industrial era, but this is not the case. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). The FELA differs from workers' compensation schemes in several respects. Most significant for our purposes, the FELA does not include an explicit exclusive remedy provision, always an essential component of a workers' compensation act. *See, e.g.,* in the Wisconsin Worker's Compensation Act, Wis. Stat. § 102.03(2) (providing that when conditions of liability are satisfied "the right to recovery of compensation under this chapter shall be the exclusive remedy against the employer ...") The absence in the FELA of express federal preemption of other tort actions reflects the Act's distinct legislative goal. Unlike the strict liability workers' compensation statutes of the same period, which primarily sought to shift financial losses and delimit compensable injuries so as to protect young industries while still ensuring minimal compensation, the FELA established a *fault-based* notion of liability, aimed at encouraging higher safety standards in the especially treacherous railroad industry. *See Rogers v. Consol. Rail Corp.*, 948 F.2d 858, 860–61 (2nd Cir.1991). Thus, although railroads had no recourse to common-law defenses, injured employees still had to prove negligence in order to recover, giving employers an enhanced incentive to maintain safe working environments. Conversely, although railroad workers injured on the job were not guaranteed financial recovery, their ability to bring other actions against their employers was not so severely limited by statutory decree.

Over the years, the FELA has been interpreted by courts to preempt certain state tort claims, but not to the vast, comprehensive extent suggested by Soo Line in this action. The defendant's argument for preemption rests on two related propositions. First, the defendant asserts that claims for both negligent infliction of emotional distress and intentional infliction of emotional distress

are, generically and without exception, "cognizable" under the FELA. The court disagrees with this assertion. Second, the defendant asserts that since plaintiffs' claims are theoretically "cognizable" under the FELA (though concededly not "valid" or subject to compensation), the claims are preempted because the FELA "occupies the field" of employer liability for on-the-job injuries to railroad workers. I disagree with this assertion, as well, because I find the distinction made by defendant—between cognizable but non-compensable FELA claims—to be artificial and unsupported by case law, and because neither the FELA nor constitutional preemption doctrine requires me to preempt state claims which do not interfere with the federal statute's legislative purpose. Because my reasoning applies equally to claims for both negligent and intentional infliction of emotional distress, the claims are discussed together below.

## II.

■ Since *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807(7th Cir.1985), the law in the Seventh Circuit has been settled that "the FELA does not reach torts which work their harm through nonphysical means." *Id.* at 815; *see also Ray v. Consolidated Rail Corp.*, 938 F.2d 704 (7th Cir.1991).

> [T]he FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact—an act such as telling a man he's fired ... Even firing a worker in retaliation for bringing an FELA suit against his employer does not violate the FELA.

*Lancaster* at 813, 815. The Seventh Circuit implicitly based its conclusion about the scope of the FELA remedy on the recognized historical purpose of the Act—to eliminate traditional tort defenses to liability in the railroad context, thereby making recovery easier for employees and dangerous working conditions more costly for employers. *See id.* at 812–15. In rejecting a Fifth Circuit analysis finding a valid FELA cause of action for overworked, stressed-out clerical employees, the Seventh Circuit made its position clear: "That is not our idea of an FELA claim; it has nothing to do with the security of the person from physical invasions or menaces." *Id.* at 813 (rejecting *Yawn v. Southern Ry.*, 591 F.2d 312 (5th Cir.1979)).

*Lancaster*'s insistence that an FELA claim must allege injury brought on by physical harm or by the threat of physical harm is analytically distinct from the question of whether the FELA allows recovery for purely emotional injury. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), addressed the latter inquiry. In *Gottshall*, the United States Supreme Court resolved at least half of the question left unanswered by *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), seven years earlier. *Buell* had declined to decide whether "emotional injury" is cognizable under the FELA because such a decision, in the context of a claim for either intentional or negligent infliction of emotional distress, "might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Buell*, 480 U.S. at 568, 107 S.Ct. 1410. *Gottshall* limits itself to the claim of negligent infliction of emotional distress, but nevertheless "field[s] the *Buell* pitch." *Gottshall*, 512 U.S. at 562, 114 S.Ct. 2396.

Although *Gottshall*, in a sense, was responding to a different question, the Supreme Court arrived at the same answer as the Seventh Circuit did in *Lancaster*. Specifically, the Court found that "an emotional injury constitutes "injury" resulting from the employer's "negligence" for the purposes of FELA only if it would be compensable under the terms of the zone of danger test." *Gottshall* at 555, 114 S.Ct. 2396 (referring to 45 U.S.C. § 51). The common-law zone of danger test "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48. The Supreme Court's familiar rationale for importing the zone of danger analysis into FELA jurisprudence was that the test was "consistent with FELA's central focus on physical perils." *Id.* at 555. Not only is the zone of danger test virtually identical to the Seventh Circuit rule of "no FELA claims for injuries caused by nonphysical

means," the Supreme Court cites *Lancaster* approvingly throughout *Gottshall*, clearly ratifying this Circuit's conception of a "legitimate" FELA claim. *See id.* at 558, 114 S.Ct. 2396 (quoting *Lancaster* to summarily dismiss one respondent's action as "not our idea of an FELA claim").

█ In sum, whatever generalities *Gottshall* appears to be making about the "cognizability" of claims for negligent infliction of emotional distress, the Court's holding is limited by its own analysis and, in this Circuit, by the holding in *Lancaster*. Thus, while the defendant argues that *Gottshall* clearly states that "claims for damages for negligent infliction of emotional distress are cognizable under FELA," *id.* at 550, 114 S.Ct. 2396, a more meaningful statement of the Court's holding is that such claims *may* be cognizable, if the relevant conditions are satisfied. Significantly, the Court describes the conflict resolved by *Gottshall* as one concerning the "threshold standard" required for claims alleging negligent infliction of emotional distress. *Id.* at 540–41, 114 S.Ct. 2396. Like *Lancaster*, *Gottshall* does not assume that either all claims for emotional injury will be cognizable, or all will not be. *Gottshall* speaks to the "proper scope" of recovery, or "to what extent" such claims are cognizable. *Id.* at 541, 114 S.Ct. 2396.

The distinction that Soo Line tries to make, between a claim's "cognizability" under the FELA and its "compensability" under the Act is not supported by *Gottshall*, which uses the categories interchangeably, or by any of the authorities cited by the defendant. As a practical matter, this distinction has relevance only in the context of preemption, and only then if the defendant's characterization of the sweeping preemptive nature of the FELA is true.

█ The court finds, then, based on the tests established by the Seventh Circuit in *Lancaster* and the Supreme Court in *Gotts-*

hall, that the plaintiffs' claims for negligent and intentional infliction of emotional distress in this action are not cognizable under the FELA.[1] The complaint alleges no physical contact in the conduct of Soo Line managers or co-employees, and no immediate risk or threat of physical harm to Ms. Harris–Scaggs. The closest the complaint comes to such an allegation is the claim that Ms. Harris–Scaggs overheard a co-worker say that another African–American employee should be "taken out and strung from a tree." (Compl. at ¶ 14.) The court does not find this remark to be sufficiently threatening to the plaintiff's own physical security to place her within a so-called "zone of danger." Accordingly, the plaintiffs have not stated a cause of action covered by the FELA on either their negligent or intentional infliction of emotional distress claim. *Lancaster* at 813; *Gottshall* at 547–48, 555, 114 S.Ct. 2396. The court's discussion of Soo Line's motion to dismiss based on FELA preemption could stop with this conclusion, but the FELA's preemptive scope is addressed more fully below.

### III.

█ Even accepting the court's determination that the plaintiffs' state law claims are not cognizable under the FELA, the defendant would argue that the claims are still precluded because the FELA preempts *all* work-related personal injury claims by railroad employees. The question here implicates federal preemption doctrine, rooted in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, and leads us back to an examination of the FELA's legislative purpose. The Supreme Court has consistently held that a federal statute overrides state law when the scope of the statute indicates that Congress intended to "occupy the field," or when state law is in actual conflict with the federal statute. *Freightliner Corp. v. Myrick*, 514

---

1. The decision in *Lancaster* concerned a claim for intentional infliction of emotional distress under the FELA, whereas *Gottshall* expressly limited its holding to the tort of negligent infliction of emotional distress. *See Gottshall*, 512 U.S. at 541 n. 2, 114 S.Ct. 2396. However, the courts' reasoning, outlined above, did not turn on the degree of intentionality and now appears equally valid in the context of intentional *or*

negligent conduct. Indeed, even prior to *Gottshall* in 1994, the Seventh Circuit believed that *Lancaster* suggested that a claim for negligent infliction of emotional distress "may not be cognizable under FELA" if the plaintiff fails to allege physical contact or the threat of physical contact. *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1023 n.2 (7th Cir.1989).

U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

> Absent explicit pre-emptive language, Congress' intent to supercede state law altogether may be found from a scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.

*Pacific Gas & Elec. v. Energy Resources Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (internal quotation marks and citations omitted).

As previously noted, the FELA contains no express preemptive language. Furthermore, the legislative "scheme" reflected in the FELA is notably restrained. *See* 45 U.S.C. §§ 51–60. The Seventh Circuit has observed that "the line between a tort suit under the FELA and a tort suit under state law is not in practice a sharp one," with a few exceptions. *Lancaster,* 773 F.2d at 813–14. Specifically, the FELA allows injured railroad workers, employees of a quintessentially "national" industry, to bring their tort claims in federal court; the statute also eliminates certain defenses previously available at common law; and, finally, the Act has been liberally construed to provide recovery with minimal proof of employer negligence. *Id.* But, as a matter of statutory construction, the FELA hardly compels the conclusion that Congress meant to displace all relevant state law. Rather, as *Gottshall* demonstrates, the FELA incorporates common-law rules by design.

> For Congress, in 1908, did not crystallize the application of the Act by enacting specific rules to guide the courts. Rather, by using generalized language, it created only a framework within which the courts were left to evolve, much in the manner of the common law, a system of principles providing compensation for injuries to employees

consistent with the changing realities of employment in the railroad industry.

*Kernan,* 355 U.S. at 437, 78 S.Ct. 394.

Soo Line claims that the FELA's preemptive reach, though not suggested by the statute itself, has been conclusively established by judicial interpretation. Without exception, however, the cases cited by the defendant support no more than the proposition that the FELA preempts personal injury claims *of the sort contemplated by the statute.* A typical phrasing of the exclusivity of the FELA remedy is found in *Lancaster,* 773 F.2d at 812 (emphasis added): "[T]he FELA preempts state law *within its domain.*" And also in *Metropolitan Coal Co. v. Johnson,* 265 F.2d 173, 177 (1st Cir.1959) (emphasis added): "[T]he Federal Employers' Liability Act, *when applicable,* is the exclusive remedy against a railroad for injuries to its employees." Other holdings about FELA exclusivity are limited by implication, based on our current understanding of the word "injury" under the FELA, and of what constitutes a cognizable FELA claim. *See* discussion of *Gottshall* and *Lancaster supra.*

Most of the defendant's authorities cite ultimately to *New York Cent. R.R. Co. v. Winfield,* 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1917), an early FELA case working out the relative terrain between the FELA and state workers' compensation statutes. The question in *Winfield* was whether a physical injury sustained on the job by a railroad worker, but not attributable to the employer's negligence, could be compensated under New York's no-fault Workmen's Compensation Law. *Id.* at 147–48, 37 S.Ct. 546. Thus, the preemption issue in *Winfield* arose in a factual context which challenged the distinctive negligence-based scheme established for the railroad industry by the FELA. The Supreme Court's resulting description of FELA exclusivity is best understood in this light. *See Winfield,* 244 U.S. at 150, 37 S.Ct. 546 (finding that the Act "was intended to be very comprehensive, to withdraw all injuries to railroad employees in interstate commerce from the operation of various state laws, and to apply to them a national law having a uniform operation throughout all the states").

Furthermore, Supreme Court rulings of the same period simply do not indicate that the FELA was consciously designed to preempt claims for which it provided no potential remedy. *Wabash R.R. Co. v. Hayes*, 234 U.S. 86, 34 S.Ct. 729, 58 L.Ed. 1226 (1914), concerned whether a railroad employee who was physically injured on the job, but not while engaged in "interstate commerce" as required by the Act,[2] could still maintain a common-law personal injury action against his employer, despite the FELA's supposed exclusivity. The Supreme Court concluded that

> [h]ad the injury occurred in interstate commerce, as was alleged, the Federal Act undoubtedly would have been controlling, and a recovery could not have been had under the common or statute law of the state; in other words, the Federal act would have been exclusive in its operation, not merely cumulative.... On the other hand, if the injury occurred outside of interstate commerce, the Federal act was without application, and the law of the state was controlling.

*Hayes,* 234 U.S. at 89, 34 S.Ct. 729 (internal citations omitted).[3] *Hayes* then determined that it was not unfair to the railroad to permit an employee to pursue a state law claim arising out of facts not covered by the FELA: "[T]he contention that the defendant was denied a right or immunity to which it was entitled under the Federal act is not only untenable, but so devoid of color as to furnish no basis for this writ of error." *Id.* at 90–91, 34 S.Ct. 729. Thus, the Supreme Court evinced no notion that the FELA required the employee's state law claim to be preempted, unless it was clearly cognizable under the Act.

The court finds scant support for the understanding of FELA's preemptive scope urged by the defendant. On the contrary, see for example *Teague v. Nat'l R.R. Passenger Corp.,* 708 F.Supp. 1344, 1354 (D.Mass. 1989) (holding that "[i]n view of the ruling that Teague's claims can be addressed under the FELA, his claims under Massachusetts common law are preempted by the federal

enactment"); or *Rogers v. Consol. Rail Corp.,* 948 F.2d 858, 862 (2nd Cir.1991) (finding no congressional intent to deprive injured employees of alternative remedies through preemption of non-cognizable FELA claims).

■ Finding nothing in the statutory design of the FELA or in subsequent judicial interpretation to compel the conclusion that the FELA "occupies the field" to such an extent that non-actionable FELA claims cannot be pursued as state law torts, this court should preempt plaintiffs' state claims in this action only if they directly conflict with the federal statute. *Pacific Gas & Elec.,* 461 U.S. at 204, 103 S.Ct. 1713. "Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation marks and citations omitted).

■ I cannot discern any sense in which the plaintiffs' claims for negligent and intentional infliction of emotional distress would interfere with FELA compliance or obstruct the legislative goals reflected in that statute. As one state supreme court has noted, affording railway employees the state tort remedy of, in that case, intentional infliction of emotional distress will not frustrate the fault-based scheme established by the FELA to impact unsafe work conditions in the railroad industry. *Pikop v. Burlington N. R.R. Co.,* 390 N.W.2d 743, 755 (Minn.1986). State torts such as these live or die by fault-based standards, as do FELA claims. Further, the conduct implicated by plaintiffs' state claims, essentially verbal racial hostility, is far afield from the employer negligence which the FELA sought to correct. The oft-cited assertion that the FELA is "no static remedy" and should adapt to the "changing conditions and changing concepts of industry's duty toward its workers," *Kernan,* 355 U.S. at 432, 78 S.Ct. 394, applies in spirit to FELA's preemptive scope, as well. In other words, unless and until the FELA itself embraces

---

**2.** The FELA was amended in 1939 to expand the definition of interstate commerce, among other things.

**3.** Interestingly, three years later *Winfield* cites this language from *Hayes* for the proposition that the FELA "is comprehensive and also exclusive." *See Winfield,* 244.U.S. at 151–52, 37 S.Ct. 546.

**1186**

state law claims such as the plaintiffs', those claims should not be found preempted under the Act.

### IV.

**THEREFORE, IT IS ORDERED** that based on the foregoing analysis, the defendant's motion to dismiss the plaintiffs' claims for negligent infliction of emotional distress and intentional infliction of emotional distress is **HEREBY DENIED.**

**FURTHER, IT IS ORDERED** that because those claims survive, the defendant's motion to dismiss Mr. Harris–Scaggs' claim for loss of consortium is also **DENIED.**