# Illinois Official Reports

## Appellate Court

---

### *Andrews v. Norfolk Southern R.R. Corp.*, 2017 IL App (1st) 153007

---

| | |
|---|---|
| Appellate Court Caption | WESLEY ANDREWS, Plaintiff-Appellant, v. NORFOLK SOUTHERN RAILROAD CORPORATION, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-15-3007 |
| Filed | March 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-004524; the Hon. Michael P. Panter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Richard A. Haydu and Steven P. Garmisa, of Hoey & Farina, P.C., of Chicago, for appellant.<br><br>Evan B. Karnes II and Everado Martinez, of Karnes Law Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Wesley Andrews, sued his employer, defendant Norfolk Southern Railroad Corporation (Norfolk Southern), under the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.* (2006)) (FELA), alleging an injury due to his employer's negligence. A jury rendered a verdict in favor of plaintiff, finding that plaintiff's injuries resulted from his employment. The final judgment following a reduction for plaintiff's contributory fault was $37,500. This appeal relates to a posttrial dispute about how to satisfy the monetary judgment. Specifically, plaintiff's attorneys contend the final judgment of $37,500 should have been used to satisfy their fees and costs in the negligence lawsuit. The trial court, however, sided with Norfolk Southern and determined the $37,500 was appropriately used to repay the railroad money it had given plaintiff for his injury before the lawsuit. Plaintiff now challenges that determination.

¶ 2                                    BACKGROUND

¶ 3    Plaintiff was a conductor who suffered a spinal injury while operating a mechanical track switch lever. Unbeknownst to him, Norfolk Southern had installed a new locking device, which allegedly caused his injury in May 2006. Following his injury, plaintiff was unable to work, so pursuant to section 55 of FELA (45 U.S.C. § 55 (2006)), Norfolk Southern paid plaintiff 38 separate advances, totaling some $75,000,[1] from June 2006 through October 2008 to compensate plaintiff for his lost time. Plaintiff signed a form whenever he received an advance, stating "I agree that the total amount of advance shall be credited against any settlement made with or any judgment rendered against my said employer or others on account of this accident."

¶ 4    In November 2008, counsel for plaintiff notified Norfolk Southern that the firm had been retained on plaintiff's negligence claim and provided a notice of an attorney's lien. Norfolk Southern suspended the advance payments, and several months later, in April 2009, plaintiff filed suit.

¶ 5    On April 28, 2014, following trial, the jury assessed 75% of the fault to plaintiff and 25% to Norfolk Southern, resulting in a net judgment of $37,500.[2]

¶ 6    Norfolk Southern filed a posttrial motion seeking a setoff for its advances under section 55 of FELA and ultimately filed a petition to satisfy and release the judgment under section 12-183(b) of the Code of Civil Procedure (Code) (735 ILCS 5/12-183(b) (West 2006)).[3] Norfolk Southern asserted both a statutory and contractual right to setoff, claiming that in accepting the advances, plaintiff had agreed to repay Norfolk Southern from any judgment

_____

[1]For the sanity of the reader, the numbers in this case are approximated where needed rather than described down to the dollar and cent.

[2]Section 53 of FELA (45 U.S.C. § 53 (2006)) permits a plaintiff to be found contributorily negligent and his damages are reduced by that amount. Unlike under FELA, in Illinois, a plaintiff who is over 50% contributorily negligent is barred from recovery. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 102 (2010).

[3]Plaintiff filed a separate motion for a bill of costs taxed to defendant for filing fees, service fees, deposition reporting services, and video evidence deposition services. The trial court granted the motion in part and denied it in part. That judgment is not at issue in this case.

against his employer related to the accident. Norfolk Southern argued that there were no sums due plaintiff and asked that the judgment be declared satisfied or fully paid. See *Klier v. Siegel*, 200 Ill. App. 3d 121, 124 (1990) (noting that is the essential purpose of section 12-183).

¶ 7 The legal expenses incurred in representing plaintiff were some $58,000, exceeding the judgment. In particular, plaintiff's attorneys claimed a 25% contingency fee lien on the judgment with the rest being litigation expenses.

¶ 8 Plaintiff also received about $23,000 in benefits from the Railroad Retirement Board while he was off work for his May 2006 injury. See 45 U.S.C. § 362(o) (2006). In a written letter, plaintiff's attorney requested that the Retirement Board relinquish its lien under section 341.5 of the Code of Federal Regulations (CFR) (20 C.F.R. § 341.5 (2006)) in light of the pending legal expenses and attorney fees. Section 341.5 explicitly states the Retirement Board is to be reimbursed by the "damages paid to the employee for the infirmity," *but only after* subtracting litigation costs, including the attorney-client fee. *Id.*; see also 45 U.S.C. § 362(o) (2006). Given the amount due the attorneys in this case, the Retirement Board responded by letter that it would have no claim for reimbursement.

¶ 9 Norfolk Southern, on the other hand, did not relinquish its right to setoff, and the posttrial issue that developed was whether to use the $37,500 judgment as a setoff against Norfolk Southern's advances or to cover the litigation expenses and fees of plaintiff's attorneys. In the first scenario, Norfolk Southern would be able to deduct the $37,500 judgment from its $75,000 advanced, resulting in a loss to Norfolk Southern of $37,500. Plaintiff's attorneys would then be out $67,000. In the second scenario, plaintiff would turn over his $37,500 judgment to his attorneys, resulting in a loss to the attorneys of $20,500 and to Norfolk Southern of $75,000. In either scenario, plaintiff himself would not get any additional funds.

¶ 10 On February 23, 2015, following a hearing in the matter, the trial court granted Norfolk Southern's petition, ruling the railroad was entitled to a full credit or to set off of the advances it made to plaintiff up to the amount of the judgment. The court ruled the judgment for $37,500 and costs was fully satisfied and all liens released. Plaintiff filed a motion to reconsider, which was denied.

¶ 11 This appeal followed.

¶ 12 ANALYSIS

¶ 13 Plaintiff now challenges the court's determination. As this case must be analyzed under the guise of FELA, we begin with some background. Congress enacted FELA in 1908 in response to the rising toll of serious injuries and death to railroad workers. *Norfolk Southern R.R. Co. v. Sorrell*, 549 U.S. 158, 165 (2007); *Harris-Scaggs v. Soo Line R.R. Co.*, 2 F. Supp. 2d 1179, 1181 (E.D. Wis. 1998). FELA generally provides the exclusive federal tort remedy for railroad employees seeking to recover for personal injury sustained in the course of employment. *Harris-Scaggs*, 2 F. Supp. 2d at 1181; *Erie R.R. Co. v. Winfield*, 244 U.S. 170, 171-72 (1917). The Act retains a humanitarian purpose and is to be liberally construed in favor of injured railroad workers in order to accomplish that object. *Consolidated R. Corp. v. Gottshall*, 512 U.S. 532, 543 (1994); *Urie v. Thompson*, 337 U.S. 163, 181-82 (1949). State and federal courts share concurrent jurisdiction over FELA actions. 45 U.S.C. § 56 (2006). Where, as here, a FELA action is adjudicated in state court, it is governed by state procedural law but federal substantive law. *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985) (*per curiam*).

¶ 14    Plaintiff now contends section 12-178(5) of the Code (735 ILCS 5/12-178(5) (West 2006)) mandates that his attorneys be paid first before any other creditor such as Norfolk Southern and argues this is a procedural matter controlled by state law.[4] Section 12-178 states that "set-off shall not be allowed *** as to so much of the first judgment as is due to the attorney in that action for his or her fees and disbursements therein." *Id.* Plaintiff maintains that under this statute, his claim for attorney fees and expenses should take primacy over any federal provision to the contrary, including section 55 of FELA, which says:

> "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.*" (Emphasis added.) 45 U.S.C. § 55 (2006).

¶ 15    In interpreting section 55, Norfolk Southern responds that FELA explicitly grants a federal right to setoff by railroad employers against any judgment obtained by the employee for employer-paid sums towards the injury. State courts therefore must first apply the federal setoff provision in a case like the present. We agree.

¶ 16    Section 55 allows employers to set off money paid to an injured employee because of his injury as long as the employer is not seeking to totally avoid liability. *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 451 (8th Cir. 1984). The purpose of the FELA setoff provision is to prevent the imposition upon an employer of double liability, as the employer need not pay twice for the same damages. *Welsh v. Burlington Northern, Inc., Employee Benefits Plan*, 54 F.3d 1331, 1337 (8th Cir. 1995). It has also long been settled that questions concerning the measure of damages in FELA actions are federal in character. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 493 (1980); see also Black's Law Dictionary (10th ed. 2014) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). This is true even if the action is brought in state court, given the congressional intent to encourage uniformity between federal and state court FELA cases. *Liepelt*, 444 U.S. at 493 n.5. Moreover, a federal statute, such as FELA, overrides state law when the scope of the statute indicates that Congress intended to "occupy the field" or when the state law is in actual conflict with the federal statute. (Internal quotation marks omitted.) *Starks v. Northeast Illinois Regional Commuter R.R. Corp.*, 245 F. Supp. 2d 896, 899 (N.D. Ill. 2003). Also, state

---

[4]We note that plaintiff raised his section 12-178(5) argument for the first time in his motion to reconsider. The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36; see also 735 ILCS 5/2-1203 (West 2006). Normally, arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal. *Evanston Insurance Co.*, 2014 IL 114271, ¶ 36. Nonetheless, here the trial court held the matter was not forfeited, stating "I appreciate the opportunity to correct an error if I made an error." The court permitted the parties to flesh out the applicability of section 12-178 to this case in responsive pleadings. Additionally, Norfolk Southern has not argued forfeiture on appeal thus forfeiting forfeiture. See *People v. Beachem*, 229 Ill. 2d 237, 241 n.2 (2008). We therefore address the merits of this case.

law is nullified to the extent that it might stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* at 899-900; see also *Felder v. Casey*, 487 U.S. 131, 138 (1988) (" 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield' " (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962))).

¶ 17    Applying these rules to the facts of this case, section 55 expressly provides that Norfolk Southern is entitled to set off the monetary damages awarded to plaintiff against the $75,000 it is owed so as to avoid paying double for the same damage.

¶ 18    Despite this rather clear mandate, plaintiff urges us to reach a contrary result based on *Ries v. National R.R. Passenger Corp.*, No. CIV. A. 89-51, 1993 WL 131490 (E.D. Pa. Apr. 27, 1993), an unpublished case from the Eastern District of Pennsylvania. In *Ries*, the court held that "AMTRACK" was not entitled to set off some $8000 of sickness benefits issued by its retained insurer without the plaintiff's attorney first being able to satisfy his attorney's lien from the approximate $9000 judgment. The court noted that section 55 of FELA is permissive but "does not create a lien entitling AMTRACK to priority over other liens made against the net judgment." *Id.* at *2. The court reasoned that section 55 does not specify a priority afforded to a setoff under section 55 as compared to competing liens asserted against the judgment and, further, that "An attorney's claim for fees incurred in creating a fund is normally afforded priority over other claims against that fund." *Id.*

¶ 19    Hewing to the *Ries* holding, plaintiff now argues that section 55's use of the permissive "may" rather than mandatory "shall", in reference to the railroad's ability to obtain setoff from the employee, means that "a railroad's opportunity to request a setoff *** does not override the priority that Illinois procedural law grants to attorneys and their clients for reimbursement of fees and litigation expenses." See 45 U.S.C. §§ 51, 52 (2006). Plaintiff argues Congress thereby accepted state procedural law and setoff mechanisms over the federal law. Plaintiff points to other FELA statutory provisions setting forth that the railroad "shall" be liable for its negligent acts (45 U.S.C. § 51 (2006)) or that the damages "shall" be diminished by the employee's contributory fault (45 U.S.C. § 53 (2006)) in further support of his above-stated interpretation. Plaintiff, in addition, points to section 341.5 of the CFR, which as stated requires plaintiff's attorneys to be reimbursed from judgment damages paid to an injured employee before the Railroad Retirement Board recoups its sick-pay costs issued. See 45 U.S.C. § 362(o) (2006); 20 C.F.R. § 341.5 (2006). Plaintiff contends this CFR provision shows that reimbursing attorneys first is not an obstacle to FELA's federal objectives and encourages the result he seeks in this appeal.

¶ 20    It is axiomatic that unpublished federal decisions are not binding or precedential in Illinois courts. *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63. Although nothing prevents us from adopting an unpublished decision's reasoning and logic, we do not find *Ries* persuasive and reject plaintiff's arguments for several reasons.

¶ 21    First, even assuming section 12-178(5) applied in this case, we conclude that it is not procedural in nature because it substantially affects the damages awarded to the plaintiff, which is a distinctly substantive federal matter. See *Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 335-36 (1988). Indeed, the United States Supreme Court has asserted federal control over a number of incidents of state trial practice that might appear to be procedural at first blush. See, *e.g.*, *Dickerson*, 470 U.S. at 411 (jury instruction on FELA damages is substantive and so determined by federal law); *Brown v. Western Ry. of Alabama*,

338 U.S. 294 (1949) (in FELA case, a state cannot apply its usual rule that pleadings are construed against the pleader); *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359 (1952) (FELA plaintiff is entitled to a jury trial in state court notwithstanding a contrary state rule). In other words, state rules that interfere with federal policy are to be rejected even if they are characterized as procedural. See also *Boyd v. BNSF Ry. Co.*, 874 N.W.2d 234, 239 (Minn. 2016) (a state's designation of a rule as one of procedure is not dispositive of the substantive-procedural distinction under FELA). "[T]he assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." (Internal quotation marks omitted.) *Brown*, 338 U.S. at 299. Likewise, accepting plaintiff's argument as to 12-178(5) would disrupt the uniformity that FELA aims to sustain, encouraging litigants to file suit in Illinois state court rather than federal court just to obtain attorney fees before setoff in the event the judgment is insufficient to cover both. See *Dice*, 342 U.S. at 361; *Brown*, 338 U.S. at 295.

¶ 22    Second, plaintiff's argument as to the Railroad Retirement Board strikes us as a red herring, since courts have long described those benefits paid out to the employee as a collateral source, which cannot be used to reduce the damages owed to the plaintiff by a defendant. *Eichel v. New York Central R.R. Co.*, 375 U.S. 253, 254 (1963); *Sloas v. CSX Transportation, Inc.*, 616 F.3d 380, 387 n.3 (4th Cir. 2010); *Friedland v. TIC-The Industrial Co.*, 566 F.3d 1203, 1205-06 (10th Cir. 1997) (defining collateral source rule).[5] Fringe benefits and insurance programs paid out to the employee by the employer cannot be set off under the collateral source rule because they are *not* considered double compensation for the same injury. *Clark*, 726 F.2d at 450-51; *United States v. Price*, 288 F.2d 448, 450 (4th Cir. 1961). Despite this longstanding practice, courts have specifically distinguished the railroad's voluntary indemnity compensation to an employee for a work-related injury under section 55 of FELA as entitled to setoff. *Clark*, 726 F.2d at 450-51. The parties do not appear to dispute that the advances made here constitute such indemnity payments and thus are not fringe benefits subject to the collateral source rule.

¶ 23    Third, plaintiff's argument that attorney fees take precedence over section 55's setoff provision is inconsistent with both the history and plain language of the federal statute. For example, in *Philadelphia, Baltimore, & Washington R.R. Co. v. Schubert*, 224 U.S. 603, 612 (1912), the railroad company had tied the injured employee's acceptance of employment membership funds to a release from all claims for damages. On appeal, the United States Supreme Court held this stipulation was anathema to the statute's plain language and goal of holding railroads liable for negligence, in direct violation of what is now section 55. The court further reasoned its interpretation was sound under the 1906 and 1908 FELA statutes, noting that while railroads could not tie the acceptance of such benefits to a plaintiff's relinquishment of recovery under FELA, the railroads still had the option of obtaining setoff from the judgment.

¶ 24    The current version of section 55 allowing for setoffs has been on the books since 1908. Congress has amended FELA several times, yet FELA remains silent on the issue of attorney

---

[5]Similarly, Illinois also recognizes the collateral source rule as a substantive rule of damages that protects collateral payments made to or benefits conferred on the plaintiff *by denying the defendant any corresponding offset or credit*. *Segovia v. Romero*, 2014 IL App (1st) 122392, ¶ 22. Such collateral benefits do not reduce the defendant's tort liability, even though they reduce the plaintiff's loss. *Id.*

fees. *Monessen*, 486 U.S. at 338-39 (noting Congress's inaction in amending FELA to provide for prejudgment interest and concluding, "If prejudgment interest is to be available under the FELA, then Congress must expressly so provide."). We can only interpret this silence as a means of upholding the "American Rule," which is a federal common law rule whereby each party is responsible for his or her own attorney fees and expenses. See *id.* at 338; *Liepelt*, 444 U.S. at 495; *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 602-03 (2001); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975); see also *Sorrell*, 549 U.S. at 168 (common law principles are entitled to great weight unless they are expressly rejected in the text of the statute). We note the same rule also applies in Illinois. *Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979) (unless otherwise specified by statute or contractual agreement, the successful litigant is not entitled to attorney fees or ordinary litigation expenses); *State Farm Fire & Casualty Co. v. Miller Electric Co.*, 231 Ill. App. 3d 355, 359 (1992) (there is no common-law principle allowing attorney fees either as costs or damages). As stated in *Liepelt*: "The FELA, however, unlike a number of other federal statutes, does not authorize recovery of attorney's fees by the successful litigant. Only if the Congress were to provide for such a recovery would it be proper to consider them" in the amount to compensate survivors for their monetary loss. 444 U.S. at 495.

¶ 25     Were we to accept plaintiff's argument, it would invert the American Rule, compelling the railroad to pay double for the damages for the exclusive benefit of plaintiff's attorneys. That is contrary to both federal law and Illinois's own policy against a plaintiff's double recovery. *Klier v. Siegel*, 200 Ill. App. 3d at 127 (an injured person is entitled to one full compensation for his injuries). Where, as here, plaintiff has no remaining monetary damages, his attorneys have no claim on the judgment issued. That Congress thought to provide regulations relating to attorney fees via the Railroad Retirement Board further supports our interpretation. In other words, had Congress wished for attorney fees to be the first paid out of the injured plaintiffs' monetary damages, we are confident Congress would have amended the FELA statute to so provide.

¶ 26     We also reject plaintiff's argument that because the language in section 55 is permissive (in so far as the railroad "may" seek its indemnity sum from plaintiff's FELA judgment award), the setoff provision lacks primacy as against attorney fees. Plaintiff appears to argue that paying the plaintiff's attorneys first is consistent with FELA's goal of promoting injured railroad workers due to their employers' negligence. We note that the statute's remedial purpose does not require us to interpret every uncertainty in the Act in favor of employees. *Sorrell*, 549 U.S. at 171. Moreover, even assuming it did require such interpretation, the permissive language in section 55 appears to be less about the plaintiff's attorneys and more about encouraging the railroads perhaps in some instances *not* to seek setoff as against an injured employee. That is, the fact that railroads "may" seek setoff actually means they *need not* seek setoff should they so choose, which is in deep contrast to their mandatory obligation to cover injury caused by their negligence under FELA. Once railroads do seek setoff, the statute rather plainly provides that they should be paid back from the judgment. Thus, the mere fact that the right to setoff is permissive does not diminish that this right and practice is federal in nature and therefore should be considered a subject of federal substantive law.

¶ 27     Lastly, we conclude that section 12-178(5), on which plaintiff relies, simply does not apply in this case for several reasons. Initially, we observe section 12-178(5) cannot be read without

first considering its companion sections, 12-176 and 12-177. Section 12-176 says that "Judgments between the same parties may be set off, one against another, if required by either party, as prescribed in the following Section." 735 ILCS 5/12-176 (West 2006). That "following Section" is 12-177, which goes on to say, "When one of the judgments is delivered to an officer to be enforced, the debtor therein may deliver his or her judgment to the same officer, and the officer shall apply it, as far as it will extend, to the satisfaction of the first judgment, and the balance due on the larger judgment may be collected and paid in the same manner as if there had been no set-off." 735 ILCS 5/12-177 (West 2006). Only after first considering these two sections can we interpret the list of five exceptions identified in 12-178, specifically number five, which says "Such set-off shall not be allowed *** as to so much of the first judgment as is due to the attorney in that action for his or her fees and disbursements therein." 735 ILCS 5/12-178(5) (West 2006). The purpose of exempting attorney fees from the set-off provision is to render the attorney's claim for fees preferred as against his client's judgment creditors. *Adam Martin Construction Co. v. Brandon Partnership*, 135 Ill. App. 3d 324, 327 (1985).

¶ 28    Having considered the provisions together, it is clear that there must be more than one judgment at stake, as between two competing judgment lien holders. Here, we have only one judgment of $37,500 for plaintiff. The enforcement of Norfolk Southern's statutory right to set off advance payments against an ultimate judgment by the injured party is not a matter contemplated under the plain language of section 12-178(5) and its companion provisions. See *Bueker v. Madison County*, 2016 IL 120024, ¶ 13 (the primary rule of statutory construction is to ascertain and give effect to the legislature's intent, the most reliable indicator of which is the statutory language in its plain and ordinary meaning). Moreover, the trial court never determined the exact attorney fees or litigation expenses that would be owed to plaintiff's attorneys. See *Adam Martin Construction*, 135 Ill. App. 3d at 328 (for section 12-178(5) to apply, the judicial body must specify the attorney fees owed). While section 12-178(5) would allow for attorney fees under the right circumstances, we likewise question whether "disbursements" is the equivalent of general litigation expenses. See Black's Law Dictionary (10th ed. 2014) (Disbursement is "[t]he act of paying out money, commonly from a fund or in settlement of a debt or account payable."). We conclude that section 12-178(5) simply does not apply to the scenario we have before us. As stated, even if it did apply, section 12-178(5) operates as a substantive provision that must first yield to section 55's allowance of railroad setoff.

¶ 29    Additionally, we note that the railroad made the advances before plaintiff retained counsel and filed suit in this case. Plaintiff's attorneys have not denied that they knew of these advances that were due back to the railroad. We view the issue of setoff as just one more factor an attorney should consider before taking on a FELA negligence case.

¶ 30    Based on our conclusions above, we need not address plaintiff's remaining argument that the advance receipts incorporated section 12-178(5) as part of the contract or that section 12-178(5) overrides section 12-183(b) of the Code.

¶ 31                                    CONCLUSION

¶ 32    Based on the foregoing, we conclude Norfolk Southern is entitled to set off the $37,500 judgment for plaintiff against the presuit advances it made to plaintiff. Accordingly, after costs

are deducted, nothing is due on the judgment to plaintiff. It is fully satisfied or paid.

¶ 33        Affirmed.